# REID AND RIEGE, P.C. *v.* BARRY L. BULAKITES
## (AC 32497)

Lavine, Bear and Schaller, Js.

Argued September 16—officially released November 22, 2011

*John Q. Gale,* with whom was *Derek G. Poirier,* for the appellant (defendant).

*Paul E. Pollock,* for the appellee (plaintiff).

*Opinion*

LAVINE, J. The issue in this case is whether an oral agreement placed on the record in open court that concludes the dispute between the parties must comply with the statute of frauds, General Statutes § 52-550 (a). Our appellate courts have noted that an agreement that settles the dispute between parties and is placed on the record in open court is enforceable although the agreement has not been reduced to a writing signed by the parties. See *Sparaco* v. *Tenney,* 175 Conn. 436, 437, 399 A.2d 1261 (1978) (stipulated judgment); see also *Arseniadis* v. *Arseniadis,* 2 Conn. App. 239, 244, 477 A.2d 152 (1984) (settlement agreement). We therefore affirm the judgment of the trial court.

The defendant, Barry L. Bulakites, appeals from the judgment of the trial court, *Hon. Jerry Wagner,* judge trial referee, claiming that the court incorrectly applied § 52-550 (a) (5), by granting the motion to enforce the settlement filed by the plaintiff, Reid & Riege, P.C.[1] We disagree.

The following facts are relevant to this appeal. By writ of summons and complaint, on July 17, 2006, the plaintiff commenced a collection action against the defendant for legal services rendered. The complaint alleged that the defendant owed the plaintiff legal fees in excess of $169,000 for representing him in a federal

[1] The defendant also claims that (1) our appellate courts have not specifically held that an oral agreement made on the record in open court satisfies the statute of frauds and (2) at a minimum, safeguards should be put in place if our courts are to enforce agreements that cannot be completed within one year of their making and are made on the record in open court but are never reduced to writing. We need not address these claims to resolve the defendant's appeal.

action between March 30, 2003, and March 3, 2005. The then self-represented defendant denied the pertinent allegations of the complaint, asserted several special defenses and alleged, in a counterclaim,[2] that the plaintiff engaged in fraudulent billing practices, violated various Connecticut consumer protection laws, refused to engage in arbitration, violated the rules of professional responsibility and breached the professional duty owed to the defendant. The plaintiff denied the special defenses and the allegations of the counterclaim.

On March 4, 2009, the parties attended a pretrial conference at which they agreed to participate in court-annexed mediation before Judge Wagner. As a result of the mediation, the parties reached an agreement. Counsel for the parties appeared before the court, *Elgo, J.*, on July 8, 2009, at which time the plaintiff's counsel stated the agreement for the record.[3] In his brief to this

---

[2] Although the pleading in the record is entitled a cross claim, it technically is a counterclaim. See *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, 109 Conn. App. 125, 131, 952 A.2d 56 (2008).

[3] The July 8, 2009 transcript contains the following colloquy:

"The Court: And counsel, we've had an opportunity to meet in chambers. Would one of you like to present the agreement on the record, please.

"[The Plaintiff's Counsel]: Yes, Your Honor. The parties have agreed to settle the above matter on the following terms: The defendant will pay the plaintiff $30,000 within sixty days or before September 8, 2009. Thereafter, beginning October 8, 2009, the . . . defendant will pay the plaintiff $7083.33 each month beginning October 8, 2009, and every month thereafter until September 8, 2009, on the eighth day of each month. If no payment . . .

"The Court: That's September 8 . . .

"[The Plaintiff's Counsel]: of 2010.

"The Court: 2010. Okay.

"[The Plaintiff's Counsel]: If no payment is made by the defendant on the date required or within ten days for the monthly payments, the plaintiff will obtain a judgment in the amount of $115,000 reduced by whatever payments have been made by the defendant. As Your Honor had indicated, we have discussed the trial date in January and *we had requested that the trial be canceled because we have reached an agreement.*

"The plaintiff has agreed that as of June 15, 2010, the above matter will be withdrawn unless previous thereto we receive a judgment because of failure of the defendant to make payment. It is understood and the plaintiffs agree to withdraw the case and forgo any trial based upon this agreement

court, the defendant states that he was not canvassed by the court but concedes that he was present at the time the agreement was entered into the record. Thereafter, as Judge Elgo had ordered, the plaintiff's counsel reduced the agreement to writing and forwarded it to counsel for the defendant. The defendant never signed the agreement and made no payments to the plaintiff. On September 21, 2009, the plaintiff filed a motion to enforce the settlement. The defendant filed an objection to the motion to enforce the settlement, arguing that the terms of the agreement could not be completed within a year of its making and therefore needed to be reduced to writing and signed by the parties. The plaintiff replied to the objection by asserting that the statute of frauds does not void an oral agreement placed into the court record. On July 6, 2010, Judge Wagner granted

and it is understood that after June 15, if the payments aren't made that are due on July 8, August 8, or September 8, those payments aren't made within the ten days as designated, the plaintiff will reopen the withdrawal, open the suit and obtain a judgment again in the amount of $115,000 reduced by all payments that have been made up to that time.

"Your Honor kindly pointed out to us the *Audubon [Parking Associates]* case . . . . Both myself and defense counsel have read that and our agreement concerning the withdrawal on June 15 and our right to reopen that withdrawal if there's a default in the agreement is premised on the language and legal authority designated or indicated in the *Audubon* case.

"The Court: Okay.

"[The Plaintiff's Counsel]: And it is, Your Honor had requested and we've agreed to reduce this agreement to writing, signed by the attorneys and the parties and to have it to the court. That's probably within a couple of weeks because the defendant is out of state so it may take some time.

"The Court: Okay.

"[The Plaintiff's Counsel]: I think I've covered everything.

"The Court: All right. [The defendant's counsel.]

"[The Defendant's Counsel]: I've listened very carefully to [the plaintiff's counsel] as he's put our agreement on the record, and I agree that that's our agreement.

"The Court: Okay. And you can represent on behalf of your client that your client understands the terms of this agreement and is in agreement with it?

"[The Plaintiff's Counsel]: Yes, I think that's the case.

"[The Defendant's Counsel]: Yes, ma'am, it is." (Emphasis added.)

the plaintiff's motion to enforce the settlement. The defendant appealed.

The defendant claims that Judge Wagner did not correctly apply § 52-550 (a) (5). Section 52-550 (a) provides in relevant part: "No civil action may be maintained in the following cases unless the agreement . . . is made in writing and signed by the party, or the agent of the party, to be charged . . . (5) upon any agreement that is not to be performed within one year from the making thereof . . . ." Resolution of the defendant's claim requires us to construe the statute.

This claim is a matter of statutory construction, which "is a question of law to which the plenary standard of review applies." *Friends of Animals, Inc.* v. *United Illuminating Co.*, 124 Conn. App. 823, 854, 6 A.3d 1180 (2010). "Statutes must be interpreted to give meaning to their plain language and to provide a unified body of law." (Internal quotation marks omitted.) Id. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *In re A.R.*, 123 Conn. App. 336, 339, 1 A.3d 1184 (2010).

We conclude that the first six words of § 52-550 (a), providing that "no civil action may be maintained," are

clear and unambiguous. Our review of the record demonstrates that the present action was commenced to collect legal fees allegedly owed by the defendant pursuant to a retainer agreement for the services rendered by the plaintiff. The plaintiff did not seek to maintain a new action by filing a motion to enforce the settlement. Notably, the plaintiff did not use the procedures set forth in General Statutes § 52-45a in filing the motion to enforce the settlement. See, e.g., *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 554-55, 944 A.2d 329 (2008) (both § 52-45a and Practice Book § 8-1 [a] require signed writ to commence civil action); compare *Investment Associates* v. *Summit Associates, Inc.*, 132 Conn. App. 192, 204, 31 A.3d 820 (2011) (motion to revive did not begin new action). Moreover, the stipulation placed on the record here demonstrates that the agreement was entered into by the parties to avoid trial in the underlying litigation. See footnote 3 of this opinion. That fact brings this case within the holding of *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993).

In *Audubon Parking Associates Ltd. Partnership*, the plaintiff commenced an action for breach of a commercial lease. Id., 805. "During jury selection, the parties represented on the record, in open court before the trial judge . . . that they had agreed to settle the entire matter . . . ." Id., 806. After the settlement agreement had been placed on the record and agreed to by the parties, the court required the parties to withdraw the complaint and counterclaim immediately for administrative purposes. Id., and n.3. "The court then stated that '[s]hould this matter unravel and the parties choose not to proceed on the settlement . . . I will allow the matter to be reinstated . . . .' " Id., 806. The defendants, however, failed to abide by the settlement and the plaintiff filed a motion to open, which was granted

by the court. Id., 806–807. Thereafter, "the plaintiff filed a motion for judgment in accordance with and enforcement of the settlement contract . . . ." Id., 807. The court rendered judgment against the defendants in accordance with the settlement agreement, concluding that "the parties had intended to enter into a binding settlement . . . ." Id. The defendants appealed.[4]

Our Supreme Court stated, "the gravamen of the defendants' claim is that the plaintiff, once it filed a motion to open the judgment, had elected to pursue its claim under the lease and was therefore precluded from seeking enforcement of the settlement contract."[5] Id., 808. Our Supreme Court disagreed with the defendants.

"An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty. . . . If there is a breach of the accord, the obligee has the option of either seeking enforcement of the original duty or seeking enforcement of any obligation under the accord." (Citations omitted; internal quotation marks omitted.) Id., 809. Here, it is significant that the defendant does not dispute the terms of the settlement agreement placed on the record before Judge Elgo.

"A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many

---

[4] This court reversed the judgment of the trial court, holding that the defendants were entitled to a jury trial on the plaintiff's underlying claim or on the settlement agreement. *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 26 Conn. App. 181, 183–85, 599 A.2d 395 (1991), rev'd in part, 225 Conn. 804, 814, 626 A.2d 729 (1993).

[5] The defendants also claimed that they were entitled to a jury trial. *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 809. Our Supreme Court disagreed; id.; but that issue is not relevant to the facts and claim in this appeal.

situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." (Citations omitted; internal quotation marks omitted.) Id., 811.

In upholding the judgment rendered by the trial court in *Audubon Parking Associates Ltd. Partnership*, our Supreme Court quoted from *Janus Films, Inc.* v. *Miller*, 801 F.2d 578, 583 (2d Cir. 1986). "Due regard for the proper use of judicial resources requires that a trial judge proceed with entry of a settlement judgment after affording the parties an opportunity to be heard as to the precise content and wording of the judgment, rather than resume the trial and precipitate an additional lawsuit for breach of a settlement agreement. This authority should normally be exercised whenever settlements are announced in the midst of a trial." (Internal quotation marks omitted.) *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 812.

Our Supreme Court thereafter held that "a trial court may summarily enforce a settlement agreement within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement." Id. Although that holding was rendered in the context of a defendant's right to a jury trial on the settlement accord, with respect to the case before us, it is a distinction without a difference. The key element with regard to the settlement agreement in *Audubon Parking Associates Ltd. Partnership* and this case is that there is no factual dispute as to the terms of the accord. "Generally, [a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law [only] when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement." (Citation

omitted; internal quotation marks omitted.) *DAP Financial Management Co.* v. *Mor-Fam Electric, Inc.*, 59 Conn. App. 92, 95, 755 A.2d 925 (2000).[6]

"The primary purpose of the statute of frauds is to provide reliable evidence of the existence and the terms of the contract . . . ." (Internal quotation marks omitted.) *Electrical Wholesalers, Inc.* v. *M.J.B. Corp.*, 99 Conn. App. 294, 302, 912 A.2d 1117 (2007). "A stipulated judgment made in open court is not within the [s]tatute of [f]rauds, and therefore it was not error for the trial court to act upon an oral stipulation even though its subject matter was real property." *Sparaco* v. *Tenney*, supra, 175 Conn. 437.[7] Similarly, an oral settlement agreement placed on the record in open court by counsel for the parties is not within the statute of frauds although the agreement cannot be completed within one year. "Oral stipulations recorded in open court are just as binding, obligatory and conclusive as if in writing and executed with every legal formality . . . ." *Arseniadis* v *Arseniadis*, supra, 2 Conn. App. 244. We conclude therefore that the oral settlement agreement placed on the record before Judge Elgo and assented to by counsel for the parties is binding, as if the agreement were in writing and signed by the party to be charged.[8]

[6] In *DAP Financial Management Co.* v. *Mor-Fam Electric, Inc.*, supra, 59 Conn. App. 93, this court affirmed the judgment of the trial court that found that "there was a binding agreement between the parties by finding that . . . counsel had agreed to the settlement . . . ."

[7] "[A] stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement." (Internal quotation marks omitted.) *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 389–90, 985 A.2d 319 (2009).

[8] Where a settlement agreement is placed on the record in court "the fact that an oral agreement was later to be memorialized in writing does not make it any less enforceable." (Internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 529, 4 A.3d 288 (2010).

The judgment is affirmed.

In this opinion the other judges concurred.