INVESTMENT ASSOCIATES *v.* SUMMIT
ASSOCIATES, INC., ET AL.
(AC 32227)

DiPentima, C. J., and Lavine and Schaller, Js.

Argued May 18—officially released November 22, 2011

*Proloy K. Das*, with whom was *Bernard F. Gaffney*, for the appellant (defendant Joseph D. Lancia).

*Pasquale Young*, with whom was *David Pegnataro*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. This appeal arises from the application of 2009 legislation creating a new procedure enabling the enforcement of Connecticut judgments in foreign jurisdictions. The defendant Joseph D. Lancia appeals from the order of the trial court granting the motion to revive a judgment filed by the plaintiff, Investment Associates, pursuant to General Statutes § 52-598 (c).[1] On appeal, the defendant argues that the trial court

---

[1] General Statutes § 52-598 (c) provides: "With respect to a judgment for money damages rendered in any court of this state, including, but not limited to, a small claims session, a motion to revive such judgment may be filed with the Superior Court prior to the expiration of any applicable period of time to enforce such judgment as set forth in this section. The court may grant the motion to revive the judgment if the court finds that the applicable time period to enforce the judgment under this section has not expired. No order to revive a judgment may extend the time period to enforce a judgment beyond the applicable time period set forth in this section."

(1) lacked subject matter jurisdiction to consider the motion to revive because the plaintiff, a joint venture, had no standing, (2) lacked personal jurisdiction over him and (3) failed to provide him with an opportunity to contest the motion. We are not persuaded by the defendant's claims and, accordingly, affirm the judgment of the trial court.

The record reveals the following pertinent facts and procedural history, which are not in dispute. On January 10, 1991, the plaintiff filed suit in the Superior Court seeking to recover on a promissory note assigned to it by the defendants, Summit Associates, Inc., Ned B. Wilson and Lancia.[2] The summons named "Investment Associates" as the only plaintiff, and the first paragraph of the first count of the plaintiff's complaint alleged: "At all times herein, the plaintiff Investment Associates was a joint venture equally owned by R. S. S. McKosky and Alton W. Seavey, Jr. . . ." The defendant appeared through counsel on January 28, 1991. On May 17, 1994, the court rendered judgment in favor of the plaintiff in the amount of $272,530. The file indicates that the defendant's counsel was present at the time judgment was rendered in favor of the plaintiff. The defendant, however, has not resided in Connecticut since 1992.

More than thirteen years later, in 2007, the plaintiff commenced an action seeking to enforce the judgment. That action was dismissed for lack of personal jurisdiction over the defendant. See *Investment Associates* v. *Lancia,* Superior Court, judicial district of New Haven, Docket No. CV-07-4028746S (May 5, 2008) (45 Conn. L. Rptr. 437). Thereafter, on October 6, 2009, pursuant to § 52-598 (c),[3] the plaintiff filed a motion to revive the

---

[2] Wilson and Summit Associates, Inc., are not parties to this appeal. We therefore refer to Lancia as the defendant.

[3] On July 8, 2009, Public Acts 2009, No. 09-215, "An Act Concerning the Time Limit for Enforcing a State Court Judgment in a Foreign Jurisdiction," became law and thereafter took effect October 1, 2009. This act added subsection (c) to § 52-598. See footnote 1 of this opinion.

judgment in the original action alleging that the judgment remained unpaid. In response, the defendant filed a motion to dismiss. The court issued its memorandum of decision granting the plaintiff's motion to revive and denying the defendant's motion to dismiss.[4] After the defendant's motion to reargue was denied, the defendant filed this appeal.

I

On appeal and for the first time, the defendant raises a challenge to the trial court's subject matter jurisdiction. Specifically, the defendant notes that in the plaintiff's original complaint, the plaintiff alleged that it was a joint venture. According to the defendant, a joint venture is not a legal entity, and therefore the plaintiff lacked standing to file its motion to revive the judgment, and, therefore, the court lacked subject matter jurisdiction. In response, the plaintiff admits that it is a joint venture but argues that it does have legal capacity because our legislature has given joint ventures substantive legal rights through many statutes. Alternatively, the plaintiff argues that even if a joint venture lacks legal capacity,

---

[4] In its memorandum of decision, the court noted that the legislative history to § 52-598 (c) reveals that Michael R. Caporale, Jr., the lawyer who originally represented the plaintiff in the 1991 action, was one of the supporters of House Bill 6248, "An Act Concerning the Time Limit for Enforcing a State Court Judgment in a Foreign Jurisdiction." Citing to the judiciary committee's joint favorable report, the court observed that Caporale had explained the need for such legislation by stating: "I obtained a judgment in New Haven Superior Court for $272,731 but did not seek enforcement of the judgment at that time because the defendants lacked assets. Defendants then moved outside Connecticut. Some months later one defendant filed for bankruptcy while the other defendant's location in South Carolina was not ascertained until [eleven] years after the judgment. I was advised by the attorney from South Carolina I obtained to represent my clients that according to South Carolina law the time limit enforcing a judgment was ten years. Therefore, any attempt to enforce the judgment in South Carolina was doomed to fail." Conn. Judiciary Committee Joint Favorable Report, concerning House Bill No. 6248, entitled "An Act Concerning the Time Limit for Enforcing a State Court Judgment in a Foreign Jurisdiction."

such status does not deprive a court of subject matter jurisdiction.

After oral argument, we requested and the parties filed supplemental briefs on whether the defendant's challenge to the court's subject matter jurisdiction was timely. Specifically, we instructed: "Counsel are sua sponte ordered to file simultaneous supplemental briefs of no more than ten pages on or before August 4, 2011, addressing and explaining how the following language from *Urban Redevelopment Commission* v. *Katsetos*, 86 Conn. App. 236, 241, 860 A.2d 1233 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1289 (2005), relates to the [defendant's] challenge to the trial court's subject matter jurisdiction: 'Our Supreme Court, however, has stated that there are boundaries to challenges concerning the issue of subject matter jurisdiction. As we have only recently observed . . . [t]*he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal.* James & Hazard, Civil Procedure (2d Ed. 1977) § 13.16, esp. 695–97; Restatement (Second), Judgments 15 (Tent. Draft No. 5 1978). . . . Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so. James & Hazard, op. cit. 695; Restatement (Second), Judgments, supra.' [Emphasis in original.]."

An examination of *Urban Redevelopment Commission* v. *Katsetos*, supra, 86 Conn. App. 236, is instructive in the resolution of this case. After adopting an urban

renewal plan, the city of Stamford acquired certain properties. Id., 237. The trial court rendered a judgment pursuant to a stipulation of the parties where the defendant received a total of $720,000 in exchange for transferring his property to the city and agreeing to waive any and all claims. Id., 238. Three years later, the defendant filed a motion to open the judgment, claiming that the court had lacked jurisdiction over the parties and the judgment was void ab initio. Id. The defendant stated that in *Aposporos* v. *Urban Redevelopment Commission*, 259 Conn. 563, 790 A.2d 1167 (2002), our Supreme Court concluded that "the condemnation proceedings were invalid as a result of the commission's failure to follow the relevant statutory requirements. Id., 579–80." *Urban Redevelopment Commission* v. *Katsetos*, supra, 238. The trial court denied the defendant's motion to open on the ground that it was filed more than four months after the judgment had been rendered. Id., 239. We affirmed the judgment of the trial court on a different basis, namely, the principle of finality of judgments. Id., 239–44.

After stating the general rule that a challenge to subject matter jurisdiction may be raised at any time, we noted that the modern law of civil procedure indicates that finality of judgment may limit challenges to subject matter jurisdiction. Id., 240–41. We then identified various factors, including whether the parties had had an opportunity to challenge the jurisdiction of the court, whether it was a direct or a collateral attack on the judgment, whether the parties had consented to the jurisdiction, the prevention of a miscarriage of justice, whether the subject matter was so far beyond the jurisdiction of the court as to constitute an abuse of authority, the desirability of the finality of judgment and whether there are strong policy reasons for allowing a second opportunity to raise the issue of subject matter jurisdiction. Id., 241–43.

Applying the *Katsetos* factors, we concluded that because the defendant had accepted the financial benefit of the stipulation rather than the uncertainty of a direct appeal, his motion to open the judgment was a collateral attack on that judgment and he had failed to raise any objection to the jurisdiction of the court at the time of the sale, the motion to open properly was denied. Id., 243–44. We further noted that there was no miscarriage of justice or strong policy reason that would warrant a reversal of the trial court's judgment. Id., 244.

In the present case, the defendant argues in his supplemental brief that the issue before this court is whether the plaintiff had standing to file the 2009 motion to revive and that we need not consider the standing issue with respect to the 1994 judgment. He distinguishes this case from *Katsetos* because it involves a direct challenge to the 2009 motion to revive, while the *Katsetos* defendant's challenge was to the original judgment of the trial court. Additionally, the defendant contends that he has used the standing issue as a defense to a motion to revive, while in *Katsetos* the jurisdictional issue was the basis of the defendant's motion to open.

The plaintiff commenced the underlying action in January, 1991, and judgment was rendered in its favor on May 17, 1994. The plaintiff's motion to revive,[5] filed on October 6, 2009, nearly nineteen years after the commencement of the lawsuit and approximately fifteen and one-half years after the original judgment had been rendered, was not the beginning of a new suit against

---

[5] We note that, as a general proposition, in a proceeding for the revival of a judgment, certain broad "defenses may be successfully advanced, including the . . . incapacity of plaintiff to maintain the proceeding . . . ." 50 C.J.S., Judgments § 861 (2009); see also 46 Am. Jur. 2d, Judgments § 415 (2006) ("it is regarded as proper to urge, in defense of a proceeding for the revival of a judgment, that the judgment is void for want of jurisdiction . . . of the subject matter").

the defendant. It was a "continuation" of the original suit, "another step taken in the original action to aid in the recovery of a debt evidenced by the original judgment, in order to obtain enforcement of the original judgment . . . ." 46 Am. Jur. 2d 700, Judgments § 394 (2006). Put another way, the plaintiff did not commence a new civil action when the plaintiff filed the motion to revive. See General Statutes § 52-598 (c). Notably, the plaintiff did not use the procedures set forth in General Statutes § 52-45a[6] in filing the 2009 motion. See, e.g., *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 554–59, 944 A.2d 329 (2008) (both § 52-45a and Practice Book § 8-1 [a] require a signed writ to commence civil action). If the plaintiff had commenced a new action in 2009, the defendant would have been able to raise subject matter jurisdiction, even for the first time, in this appeal. This case, however, requires us to consider the standing issue in light of the original action, filed in 1991, and to determine whether the defendant may raise his jurisdictional claim in his appeal from a 2010 order. Our preliminary decision, then, is whether the passage of time, from 1991 until 2009, bars review of the defendant's challenge to the plaintiff's standing. We conclude that it does.

We are presented with a conflict between the principles of finality of judgments and validity of judgments. 1 Restatement (Second), Judgments, Contesting Subject Matter Jurisdiction, § 12, comment (a) (1982). "The modern rule on conclusiveness of determinations of subject matter jurisdiction gives finality substantially

[6] General Statutes § 52-45a provides: "Civil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day, the date and place for the filing of an appearance and information required by the Office of the Chief Court Administrator. The writ shall be accompanied by the plaintiff's complaint. The writ may run into any judicial district and shall be signed by a commissioner of the Superior Court or a judge or clerk of the court to which it is returnable."

greater weight than validity . . . ." Id. This rule applies even if the issue of subject matter jurisdiction has not been raised and determined expressly. Id., § 12, comment (d).

Applying the factors of *Katsetos* and the policies set forth in the Restatement (Second) of Judgments, we conclude that, under the specific facts and circumstances of this case, the doctrine of finality of judgments precludes the defendant from raising his subject matter jurisdiction claim at this time. At the outset, we note that all proceedings in this case occurred in the Superior Court, a tribunal of general jurisdiction. See *New Haven* v. *God's Corner Church, Inc.*, 108 Conn. App. 134, 137, 948 A.2d 1035 (2008) ("The Superior Court is a court of general jurisdiction. It has jurisdiction of all matters expressly committed to it and of all other matters cognizable by any law court of which the exclusive jurisdiction is not given to some other court." [Internal quotation marks omitted.]). Therefore, there are no concerns regarding a tribunal of limited jurisdiction in the present case. See generally 1 Restatement (Second), supra, § 12, comment (a). There is no claim by the defendant that he was denied the opportunity to raise a claim of lack of standing by the plaintiff from 1991 until the time that the plaintiff filed the motion to revive in 2009. See *Urban Redevelopment Commission* v. *Katsetos*, supra, 86 Conn. App. 241. The defendant failed to raise an express challenge to the subject matter jurisdiction of the court. Similarly, we are not persuaded that any strong policy reason exists to afford the defendant an opportunity to raise his standing claim at this late juncture. Id. Nor do we conclude that a miscarriage of justice exists. Id., 244. We also are mindful that the plaintiff has been the holder of a valid judgment against the defendant since 1994. Additionally, although the defendant has directly attacked the plaintiff's standing regarding the motion to revive, the practical effect of

such a challenge is a collateral attack on the 1994 judgment. Such tactics are not favored. Id.[7] For all these reasons, we conclude that the defendant is precluded from raising his subject matter jurisdiction claim.

## II

The defendant next claims that the court lacked personal jurisdiction. Specifically, he argues that the court improperly denied his motion to dismiss and improperly granted the plaintiff's motion to revive because it erroneously concluded that it had continuing jurisdiction over the defendant. The defendant begins with the assertion that § 52-598 (c) embodies a new substantive right. He then argues that, consequently, a motion to revive filed pursuant to § 52-598 (c) (1) cannot be applied retroactively and (2) is a new action for which a court must obtain jurisdiction over the parties independent of any personal jurisdiction it may have had at the time of a judgment. We conclude that § 52-598 (c) is a procedural statute that confers continuing jurisdiction on the court.

As a preliminary matter, we set forth our standard of review and the legal principles that guide our analysis. "Whether a statute applies retroactively raises a question of statutory construction over which our review is plenary." *Walsh* v. *Jodoin*, 283 Conn. 187, 195, 925 A.2d 1086 (2007). In addition, a challenge to the personal jurisdiction of the trial court is a question of law, and, therefore, our review is plenary. *Myrtle Mews Assn., Inc.* v. *Bordes*, 125 Conn. App. 12, 15, 6 A.3d 163 (2010).

---

[7] We have often indicated that a party may not follow one strategy at trial and take another tack on appeal when the first strategy failed. See, e.g., *State* v. *Castillo*, 121 Conn. App. 699, 716 n.17, 998 A.2d 177, cert. denied, 297 Conn. 929, 998 A.2d 1196, cert. denied, 562 U.S. 1094, 131 S. Ct. 803, 178 L. Ed. 2d 537 (2010). We note that the defendant, by failing to raise his standing claim until such a late date, effectively has chosen to engage in this strategy.

"It is axiomatic that, [w]hether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In seeking to discern that intent, [a court's] point of departure is . . . [General Statutes] § 55-3, which . . . [our Supreme Court has] uniformly interpreted . . . as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . As a corollary to this principle, [our Supreme Court also has] presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary. . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Internal quotation marks omitted.) *Samuels* v. *Commissioner of Correction*, 117 Conn. App. 740, 744, 980 A.2d 945 (2009). "Procedural law is that which prescribes [the] method of enforcing rights or obtaining redress for their invasion; it is the machinery for carrying on procedural aspects of [a] civil or criminal action. . . . As a general rule, laws . . . which merely prescribe the manner in which [substantive] rights and responsibilities may be exercised and enforced in court are procedural laws." (Internal quotation marks omitted.) *State* v. *Diaz*, 226 Conn. 514, 557, 628 A.2d 567 (1993) (*Berdon, J.*, dissenting).

We conclude that § 52-598 (c) is a procedural law. The statute does not create, define or regulate a right; rather, it enables a party with a valid Connecticut judgment to revive that judgment as a preliminary step to its enforcement. That is, § 52-598 (c) provides a party with a mechanism to enforce a right that he or she already possesses. "Procedural statutes have been traditionally viewed as affecting remedies . . . ." *Moore*

v. *McNamara*, 201 Conn. 16, 22, 513 A.2d 660 (1986). Consequently, absent clear indication of a contrary intent by the legislature, we presume that § 52-598 (c) may properly be applied retroactively. See *Samuels* v. *Commissioner of Correction*, supra, 117 Conn. App. 744. We can discern no such clear and contrary intent; accordingly, we conclude that the court did not improperly apply § 52-598 (c) in the present case.

We further conclude that a motion filed pursuant to § 52-598 (c) is not a new action requiring the court to obtain personal jurisdiction over the parties independent of jurisdiction present at judgment. As just discussed, § 52-598 (c) enables a party to file a postjudgment motion to revive a valid judgment and is a preliminary, procedural step necessary to enforcement of that judgment in a foreign jurisdiction. General Statutes § 52-350d (a) provides in relevant part: "For the purposes of postjudgment procedures, the Superior Court shall have jurisdiction over all parties of record in an action until satisfaction of the judgment or, if sooner, until the statute limiting execution has run . . . ." We acknowledge that a motion to revive is not one of the enumerated "postjudgment procedures" set forth in General Statutes § 52-350a (15);[8] however, the introductory language to that section clearly indicates that the list is not meant to be exhaustive. See General Statutes § 52-350a ("For the purposes of this chapter . . . *unless the context otherwise requires* . . . (15) 'Postjudgment procedure' means . . . ." [emphasis added]). As noted by the trial court in its memorandum of decision, § 52-598 (c) and its attendant legislative

---

[8] General Statutes § 52-350a (15) provides: " 'Postjudgment procedure' means any procedure commenced after rendition of a money judgment, seeking or otherwise involving a discovery procedure, a placing of a lien on property, a modification or discharge of a lien, a property execution under section 52-356a, a turnover order, an installment payment order, a wage execution, a modification of a wage execution, a compliance order, a protective order or a determination of exemption rights."

history supplies such context.[9] We conclude, therefore, that the court did not improperly determine that it could exercise continuing jurisdiction over the defendant in granting the plaintiff's motion to revive the judgment.[10]

## III

The defendant's final claim is that the court improperly granted the plaintiff's motion to revive without first affording him an opportunity to contest it. Specifically, he argues that he was unable to challenge the merits of the plaintiff's motion without waiving his personal jurisdictional claim. We are not persuaded.

On October 6, 2009, the plaintiff filed its motion to revive, and on November 5, 2009, the defendant filed a motion to dismiss challenging the court's ability to exercise personal jurisdiction over him. Thereafter, on November 23, 2009, the court held a hearing. At the start of this hearing, the court stated: "I have the motion to revive the judgment filed by the plaintiff last month and a motion to dismiss filed by the defendant." The

[9] In ruling that it had continuing jurisdiction over the defendant, the court determined: "Even if one considers the language of the text [of § 52-598 (c)] to be ambiguous, the legislative history supports the application of the statute to this case. . . . [T]he joint favorable report concerning House Bill 6248 states that the bill's enactment '[a]ffords residents with another tool to collect a valid judgment against a nonresident, for example if a judgment was rendered [eleven] years ago in Connecticut and the plaintiff seeks to enforce it in South Carolina, he or she cannot enforce the judgment because it is beyond the ten year period of collection allowed by South Carolina. This is despite the fact that the judgment is still enforceable in Connecticut.' One of the bill's supporters was Michael R. Caporale, Jr., the lawyer who originally represented the plaintiff in this action. He reported the postjudgment history in this case as a reason for supporting the bill." See also footnote 4 of this opinion.

[10] We note that at the hearing on the plaintiff's motion to revive, the defendant acknowledged that the trial court had personal jurisdiction over him at the time of judgment in 1994. Moreover, in his brief to this court, the defendant concedes that "if the 'motion to revive' were procedural, then the trial court might retain personal jurisdiction over the parties pursuant to General Statutes § 52-350d."

court then addressed the parties and stated: "So, why don't we start with [the plaintiff's] motion to revive?" Both parties then argued their respective positions on the issue of personal jurisdiction. Thereafter, on March 4, 2010, the court rendered its decision denying the defendant's motion to dismiss and granting the plaintiff's motion to revive. On March 23, 2010, the defendant filed a motion to reargue, claiming that the issue of personal jurisdiction that he had raised in his motion to dismiss prevented him from presenting his defenses to the plaintiff's motion to revive the judgment. The court denied the defendant's motion to reargue.

On appeal, the defendant claims that the court improperly granted the plaintiff's motion to revive without first giving him an opportunity to contest its merits. Specifically, the defendant contends that he could not have addressed the merits of the plaintiff's motion to revive the judgment at the hearing before the court on November 23, 2009, because he would have waived the personal jurisdiction claim raised in his motion to dismiss. He argues that his right to due process of law, as conferred by the fourteenth amendment to the United States constitution, was violated when the court granted the plaintiff's motion to revive the judgment without first affording him a hearing to contest it. We are not persuaded.

As a general matter, "a party waives the right to dispute personal jurisdiction unless that party files a motion to dismiss within thirty days of the filing of an appearance. . . . Personal jurisdiction is not like subject matter jurisdiction, which can be raised at any time and by the court on its own motion. . . . Unless the issue of personal jurisdiction is raised by a timely motion to dismiss, any challenge to the court's personal jurisdiction over the defendant is lost." (Internal quotation marks omitted.) *St. Paul's Flax Hill Co-operative*

v. *Johnson*, 124 Conn. App. 728, 739–40, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011). As noted by our Supreme Court, under our rules of practice, the filing of a responsive pleading operates as a waiver of a future challenge of the court's personal jurisdiction over a party. See *American Progressive Life & Health Ins. Co. of New York* v. *Better Benefits, LLC*, 292 Conn. 111, 120, 971 A.2d 17 (2009); see also Practice Book §§ 10-6 and 10-7.[11]

The defendant's argument, however, ignores the procedural posture of this case. We are not presented with the usual situation where a party waives a jurisdictional claim by filing a pleading. In this case, there was a postjudgment motion to revive. The defendant cites *Connecticut Student Loan Foundation* v. *Saul*, 39 Conn. Sup. 481, 466 A.2d 350 (1983), in support of his claim. In that case, after the plaintiff initiated the suit, the defendant filed an answer in 1977 and a motion to dismiss on the basis of inadequate service of process in 1981. Id., 482–83. The court concluded: "By filing his answer and special defense, the defendant thereby waived his right to contest the court's jurisdiction over him through a motion to erase the complaint (now a motion to dismiss)." Id., 483. The present case is distinguishable from *Connecticut Student Loan Foundation*.

The defendant merely has asserted, without legal analysis, that he was prevented from challenging the merits of the motion to revive. Specifically, the defendant suggests that he was denied his right to due process because he was prevented from challenging the merits of the motion to revive until after the court had ruled

---

[11] Practice Book § 10-7 provides: "In all cases, when the judicial authority does not otherwise order, the filing of any pleading provided for by the preceding section will waive the right to file any pleading which might have been filed in due order and which precedes it in the order of pleading provided in that section."

on the motion to dismiss. Due to the posture of this case, however, it is not clear that the defendant was required to wait for a ruling on the motion to dismiss prior to challenging the merits of the motion to revive. Significantly, the defendant has failed to provide any analysis as to why the general rule regarding a motion to dismiss and waiver applies. It is well settled that "[w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *Keating* v. *Ferrandino*, 125 Conn. App. 601, 603–604, 10 A.3d 59 (2010); see also *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 100 Conn. App. 63, 69 n.6, 918 A.2d 889 (2007) ("[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones" [internal quotation marks omitted]), aff'd, 286 Conn. 548, 944 A.2d 329 (2008). We therefore decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.