## J. BRIAN HAWORTH ET AL.
## *v.* JEFFERY DIEFFENBACH
## (AC 33089)

Robinson, Alvord and Borden, Js.

774

Argued December 1, 2011—officially released February 28, 2012

*Jeffery Dieffenbach*, pro se, the appellant (defendant).

*Opinion*

ALVORD, J. The defendant, Jeffery Dieffenbach, appeals from the judgment of the trial court denying his motion to dismiss and his motion for a protective order against the plaintiffs, J. Brian Haworth (Brian Haworth) and Jean Haworth,[1] pursuant to General Statutes § 52-400a (b). On appeal, he claims that the trial court improperly (1) concluded that the plaintiffs had standing to enforce the stipulated judgment in this action or, in the alternative, (2) failed to conclude that the stipulated judgment was usurious as a matter of law in violation of General Statutes § 37-4, and (3) denied his motion for a protective order pursuant to § 52-400a (b) because the plaintiffs were engaged in an illegal levy against him.[2] We affirm the judgment of the trial court

---

[1] Because the plaintiffs did not file a brief in this court or appear at oral argument, we consider this appeal on the record and the defendant's brief.

[2] We note that interlocutory orders generally are not appealable. *Sasso* v. *Aleshin*, 197 Conn. 87, 89–90, 495 A.2d 1066 (1985). In the present case, however, the defendant brought a postjudgment motion to prevent enforce-

with respect to its determination that it had subject matter jurisdiction over this matter, but agree with the defendant that the trial court improperly denied his motion for a protective order by failing to conclude that the stipulated judgment was usurious as a matter of law. Accordingly, we reverse the judgment of the trial court in part.

The following undisputed facts and procedural history are relevant to our disposition of the defendant's appeal. On December 20, 1998, the defendant signed two promissory notes for the benefit of the plaintiffs, his in-laws.[3] The defendant signed the first promissory note, in the amount of $15,000 at 10 percent interest per annum, to be paid to Brian Haworth. The defendant signed the second promissory note, in the amount of $6000 at 10 percent interest per annum, to be paid to Jean Haworth. The defendant was unable to repay either of the promissory notes, and the plaintiffs served their complaint to collect the debt plus interest from the defendant on March 21, 2000. On October 4, 2000, the plaintiffs, represented by counsel, and the defendant, self-represented, stipulated to a judgment in which the defendant agreed to pay the plaintiffs $30,000 unless he paid them the entirety of the money owed on the promissory notes, including interest, by November 30, 2000.[4]

---

ment of the judgment, which, once denied, left nothing pending before the trial court. We therefore review the defendant's claims.

General Statutes § 37-4 provides: "No person and no firm or corporation or agent thereof, other than a pawnbroker as provided in section 21-44, shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum."

[3] The defendant and the plaintiffs' daughter subsequently divorced.

[4] The defendant argues that he was under duress when he agreed to the stipulated judgment. Because we conclude that the stipulated judgment is usurious and therefore illegal, we need not reach this claim.

On February 2, 2001, the defendant filed a motion to set aside and/or to open the judgment based on fraud, mistake, misrepresentation and a known setoff claim for the return of his ancestral antique furniture that he claimed the plaintiffs were wrongfully withholding from him. Undisclosed to the defendant, on February 16, 2001, Brian Haworth filed for personal bankruptcy in the United States Bankruptcy Court for the District of Connecticut. Jean Haworth did not file for bankruptcy. Brian Haworth scheduled the $30,000 money judgment with the Bankruptcy Court but allocated only 25 percent of the judgment to himself. He scheduled the remaining 75 percent to Jean Haworth. The bankruptcy trustee objected to this allocation of the judgment at the meeting of creditors on March 20, 2001. The Bankruptcy Court sustained the trustee's objection and ordered that the entirety of the money judgment be preserved for the bankruptcy estate.

With no knowledge of Brian Haworth's bankruptcy, the defendant paid $10,000 to the plaintiffs' attorney, Melvin Bloomenthal, as trustee for Brian and Jean Haworth, in partial satisfaction of the stipulated judgment on February 26, 2001. The parties returned to court on March 19, 2001, for a hearing on the defendant's motion to open the judgment, which the court denied. The court reserved, however, the defendant's remedies against the plaintiffs regarding the return of his antique furniture. Throughout this time, the defendant was never apprised of Brian Haworth's bankruptcy. The defendant discovered its existence in the fall of 2002 via an Internet search at which point he complained to the trustee and to Brian Haworth's bankruptcy attorney, Francis Browne.

In an undated complaint with which the defendant claims he was served in January, 2003, the plaintiffs attempted to secure a judgment against the defendant

in Rhode Island state court for the remaining $20,000 pursuant to the Connecticut stipulated judgment, despite the fact that there existed an outstanding order in the Bankruptcy Court preserving the money allegedly owed. On February 26, 2004, the defendant filed a renewed motion to set aside the stipulated judgment in Connecticut court based on his discovery of the bankruptcy of Brian Haworth. The court denied the renewed motion without a hearing. The defendant filed a motion to reargue, which the court also denied without a hearing. The defendant subsequently filed a motion with the Bankruptcy Court to open Brian Haworth's bankruptcy case so that the defendant could file a proof of claim to recover his antique furniture in addition to money damages. Chief Judge Alan Shiff of the United States Bankruptcy Court granted the defendant's motion to open the bankruptcy case, and the defendant filed a proof of claim.

During the bankruptcy litigation, in which the defendant petitioned various federal courts to replace the bankruptcy trustee for failing to administer undisclosed assets in Brian Haworth's bankruptcy estate, the Rhode Island case was stayed. Brian Haworth's bankruptcy case was closed again in 2008 after the plaintiffs allegedly fled the country. The defendant alleges that the plaintiffs have resumed their attempts to collect from the defendant the remainder of the money they claim is owed to them under the stipulated judgment. The defendant claims that the plaintiffs have obtained a court order in Rhode Island to attach the defendant's wages for the balance of the $20,000.

On December 7, 2010, the defendant filed a motion with the trial court both for a motion to dismiss based on the premise that the plaintiffs lacked standing to enforce the stipulated judgment or, in the alternative, for the court to grant him a protective order to bar

enforcement by the plaintiffs of the stipulated judgment because the stipulated judgment was usurious in violation of § 37-4. After a hearing, the court denied both motions. The court instructed the defendant to petition the Bankruptcy Court to stay the present case with regard to the motion to dismiss and found no merit in the defendant's motion for a protective order.[5] This appeal followed.

## I

The defendant first claims that the trial court erroneously concluded that the plaintiffs had standing to

---

[5] The court stated: "[Y]our motion is one to dismiss the cause of action. The problem I have with it is regardless of anything else, a motion to dismiss is generally reserved to questions of the court's subject matter jurisdiction or personal jurisdiction over the parties. . . . Personal jurisdiction would have been long since waived by your failing to raise that question earlier in these proceedings. So, the only basis on which you can raise it is lack of subject matter jurisdiction, and I don't see anything in your papers that addresses the question of subject matter jurisdiction.

\* \* \*

"[I]f the Bankruptcy Court finds [your claims] cognizable, then you can renew your claims [that] there is no subject matter jurisdiction because the Bankruptcy Court has determined that the plaintiff who is maintaining this action doesn't have standing to do so because they no longer have the asset. But until the Bankruptcy Court acts, I think you're inviting me too long after the event on a nonevidentiary basis to decide a matter that is properly before the Bankruptcy Court, and I decline to do that."

Additionally, the following colloquy took place:

"[The Defendant]: The other motion is a motion for a protective order under the statute, § 52-400a.

"The Court: Excuse me for a second while I find this. I have only one motion on for today, which is [number] 127, motion to dismiss.

"[The Defendant]: Well, the caption of my papers is motion to dismiss for lack of jurisdiction and improper venue and motion for protective order on the front page. And I'm citing both the . . .

"The Court: Okay. Maybe I missed the point about the motion for a protective order. But . . . where do you address the question of a protective order? . . . That's the relief that you're requesting?

"[The Defendant]: Yes, sir. Because the stipulation is usurious. It . . . violates the Connecticut statute, § 37-4.

"The Court: Okay, all right. I find no merit in your motion."

enforce the stipulated judgment, and therefore improperly denied his motion to dismiss.[6] We disagree.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Kawecki* v. *Saas*, 132 Conn. App. 644, 648, 33 A.3d 778 (2011). "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 229, 32 A.3d 307 (2011). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Pine* v. *Dept. of Public Health*, 100 Conn. App. 175, 180, 917 A.2d 590 (2007).

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." (Internal quotation marks omitted.) *Doe* v. *Roe*, 246 Conn. 652, 661, 717 A.2d 706 (1998).

Under the United States Bankruptcy Code, in a non-community property state such as Connecticut, a debtor's interest in an asset becomes part of the bankruptcy

---

[6] The defendant argued that the plaintiffs no longer had standing to enforce the stipulated judgment against him. "The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Kawecki* v. *Saas*, 132 Conn. App. 644, 648, 33 A.3d 778 (2011).

estate along with 50 percent of any marital assets. 11 U.S.C. § 541 (a) (2); see also 5 W. Collier, Bankruptcy (A. Resnick & H. Sommer, eds., 16th Ed. 2011) §§ 541.03, and 541.11 [1] and [2]. The defendant and both Brian and Jean Haworth stipulated to the $30,000 judgment of October 4, 2000. Brian Haworth filed for personal bankruptcy, but his spouse, Jean Haworth, did not file. Under the Bankruptcy Code, therefore, $15,000 representing Brian Haworth's interest in the judgment entered the bankruptcy estate. Additionally, 50 percent of Jean Haworth's $15,000 interest in the judgment also entered the bankruptcy estate as a marital asset. That means that $22,500 of the judgment would be part of the bankruptcy estate, but $7500 would remain owed to Jean Haworth. That portion of the judgment remains pending in state court. Accordingly, the court was not deprived of subject matter jurisdiction, and it properly denied the defendant's motion to dismiss on that basis.

II

The defendant next claims that the court, in denying his motion for a protective order pursuant to § 52-400a (b), improperly failed to determine that the stipulated judgment was usurious as a matter of law pursuant to § 37-4. We agree.

"An appellate court's review of a trial court decision is circumscribed by the appropriate standard of review. As we have often stated: The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Brennan*

*Associates* v. *OBGYN Specialty Group, P.C.*, 127 Conn. App. 746, 753, 15 A.3d 1094, cert. denied, 301 Conn. 917, 21 A.3d 463 (2011). Because the determination of whether a note is usurious is a matter of law, our review of the court's decision is plenary. See *Manchester Realty Co.* v. *Kanehl*, 130 Conn. 552, 557, 36 A.2d 114 (1944); *Equity Mortgage, Inc.* v. *Niro*, 44 Conn. App. 471, 474–76, 690 A.2d 407 (1997).

"A brief overview of the pertinent usury statutes is necessary to our consideration of this issue. Section 37-4 provides in relevant part that '[n]o person and no firm or corporation or agent thereof . . . shall . . . directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum.' Lenders making usurious loans are subject to criminal penalties and civil forfeiture. General Statutes § 37-7 provides in relevant part that '[a]ny person who . . . violates . . . § 37-4 . . . shall be fined not more than one thousand dollars or imprisoned not more than six months or both.' " *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 193, 708 A.2d 1371 (1998).

"Connecticut's usury statutes provide a particularly severe penalty. . . . Under General Statutes § 37-8, a lender who loans money at an illegal rate of interest is barred from recovering both interest and principal. Because of the penal nature of this forfeiture, the statute has been strictly construed . . . . Section 37-4 is a blanket prohibition against lending money at a rate in excess of 12 percent. Section 37-5 prohibits a lender from circumventing the 37-4 interest cap by accepting either a noninterest-bearing note or a low interest-bearing note whose actual rate of interest is greater than 12 percent. These statutes read together, therefore, operate to prohibit usurious loans no matter what their form. Under our usury laws, it is of no import whether

the illegal rate is explicit on the face of the note or is included in its face value." (Citations omitted.) *Greglon Industries, Inc.* v. *Bowman,* 21 Conn. App. 131, 134–35, 572 A.2d 369, cert. denied, 215 Conn. 807, 576 A.2d 537 (1990).

"The intent which is necessary to constitute usury is not the specific intent to violate the statute but the intent to exact payments which exceed the amount of interest allowed by the statute. . . . Where all that appears in the case is that the lender has made a charge for the use of the money loaned in excess of that permitted by the statute, it follows as matter of law that there is an intent to violate the statute." (Citations omitted.) *Manchester Realty Co.* v. *Kanehl,* supra, 130 Conn. 555–56.

The original loans, made in 1998, totaled $21,000 at 10 percent interest per year.[7] The stipulated judgment rendered in 2000 required the defendant to pay the amount owed in full within one month or face a $9000 penalty, increasing his total debt to $30,000. The defendant therefore owed 43 percent interest under the stipulated judgment. If we conclude, arguendo, that the defendant already owed approximately $4200 in interest that accrued between 1998 and 2000 on the original loan at 10 percent interest per year, the defendant would owe 22 percent interest under the stipulated judgment. Either amount of interest far exceeds the 12 percent limit under § 37-4. Accordingly, the stipulated judgment is usurious as a matter of law and cannot stand. See id., 557; *Equity Mortgage, Inc.* v. *Niro,* supra, 44 Conn. App. 476.

---

[7] We consider the interest in the original agreement to be simple rather than compound interest. "Interest, in the absence of agreement . . . is simple interest . . . ." (Internal quotation marks omitted.) *Loomis & Loomis* v. *Stecker & Colavecchio Architects, Inc.,* 6 Conn. App. 88, 95, 503 A.2d 181 (1986).

## III

Finally, the defendant argues that the court improperly failed to grant his motion for a protective order pursuant to § 52-400a (b) because the plaintiffs were engaged in an illegal levy against him. We agree.

The meaning of § 52-400a (b) is a question of statutory construction and therefore our review is plenary. See *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 765, 6 A.3d 726 (2010). There are well established dictates of statutory construction that guide us in considering the meaning of this statute. See *Franklin* v. *Superior Casting*, 302 Conn. 219, 226, 24 A.3d 1233 (2011). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." *Bysiewicz* v. *DiNardo*, supra, 765.

Section 52-400a (b) provides: "On motion of a judgment debtor alleging that the judgment creditor is engaged in any illegal levy or in any other practices for the purpose of collecting his judgment which violate state or federal law, or on its own motion, the court may render such protective order as justice requires."

We conclude that the meaning of § 52-400a (b) is plain and unambiguous based upon the text itself and

its relationship to other statutes. See *Reid & Riege, P.C. v. Bulakites*, 132 Conn. App. 209, 213, 31 A.3d 406 (2011). Neither party has argued to the contrary. The text of § 52-400a (b) could not be construed to mean other than it explicitly states. The surrounding statutes concern postjudgment procedures to ensure fairness to debtors, creditors, and third parties. Interpreting the statute as written would not yield absurd or unworkable results, but allows a remedy for extraordinary situations such as in the present case, in which a protective order is the only way to ensure a just and workable result. Therefore, we apply the statute as written and need not look to extratextual sources for guidance.

Section 52-400a (b) provides for a judgment debtor to come before the court to make a motion for a protective order when the judgment creditor is engaged in an illegal levy, allowing the court to grant the motion and to render the order as justice requires. We have concluded that the judgment to which the parties stipulated in 2000 is usurious as a matter of law and is therefore illegal. Enforcement of the stipulated judgment would also violate state law pursuant to §§ 37-7[8] and 37-8.[9] The plaintiffs are thus engaged in an illegal levy against the defendant. Because the judgment is usurious as a matter of law, it cannot stand. Therefore, under the facts of this case, justice requires that the court grant a protective order to bar the enforcement of the illegal judgment against the defendant.

---

[8] General Statutes § 37-7 provides: "Any person who, individually, or as a member of any firm, or as an officer of any corporation, or as an agent of any firm or corporation, violates any provision of section 37-4, 37-5, 37-6 shall be fined not more than one thousand dollars or imprisoned not more than six months or both."

[9] General Statutes § 37-8 provides: "No action shall be brought to recover principal or interest, or any part thereof, on any loan prohibited by sections 37-4, 37-5 and 37-6, or upon any cause arising from the negotiation of such loan."

The judgment is reversed only as to the court's denial of the defendant's motion for a protective order and the case is remanded with direction to grant that motion.

In this opinion BORDEN, J., concurred.

ROBINSON, J., concurring in part and dissenting in part. I concur in the result reached by the majority in that I also would affirm the trial court's decision to deny the motion to dismiss and reverse the trial court's decision to deny the motion for a protective order. I disagree, however, with the majority's decision to reach the merits of the claims raised in the motion for a protective order and to remand the matter to the trial court with direction to grant that motion. I would remand the matter to the trial court for further proceedings on the merits of the motion for a protective order, and, therefore, respectfully dissent as to that portion of the opinion.