# URBAN REDEVELOPMENT COMMISSION OF THE CITY OF STAMFORD *v.* STEVE KATSETOS ET AL.
## (AC 24732)

Lavery, C. J., and Foti and Schaller, Js.

Argued September 23—officially released November 30, 2004

*Brenden P. Leydon,* with whom, on the brief, was *Peter V. Lathouris,* for the appellant (named defendant).

*Robert P. Dolian,* with whom were *Rachel Goldberg* and, on the brief, *Kevin P. Broughel,* for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant Steve Katsetos[1] appeals from the judgment of the trial court denying his motion to open the judgment rendered in the underlying action filed by the plaintiff, the urban redevelopment commission of the city of Stamford. On appeal, the defendant claims that the court improperly denied the motion because the plaintiff acted without statutory authority in obtaining the defendant's property and, therefore, the court lacked subject matter jurisdiction to render the underlying judgment. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the appeal. Pursuant to General Statutes § 8-124 et seq., the city of Stamford authorized the plaintiff to adopt an urban renewal plan and to acquire properties to further the goals of that plan. In December, 1999, the plaintiff sought to obtain the defendant's property located at 1017 Washington Boulevard and, pursuant to General Statutes § 8-129, filed a statement of compensation. The plaintiff deposited

[1] In the statement of compensation filed in 1999, the plaintiff identified Joseph Agostino and the Ram Corporation as having an interest in the subject property. Neither is a party to this appeal. We therefore refer to Katsetos as the defendant.

$620,000 with the clerk of the Superior Court as compensation for the property. On January 7, 2000, the parties signed a settlement agreement. In exchange for an additional $100,000, the defendant agreed to transfer his property to the plaintiff and to waive any and all claims.[2] The defendant filed a motion for payment of the deposit in the amount of $620,000, and the court ordered payment on January 31, 2000. The defendant received both the $620,000 deposit and the additional bargained for $100,000, and transferred the property to the plaintiff. The court rendered judgment accordingly.

Nearly three years later, on November 6, 2002, the defendant filed a motion to open the judgment and to dismiss the plaintiff's action. He alleged that the court was without jurisdiction over the parties and, therefore, the judgment was void ab initio. The basis for the motion was our Supreme Court's decision in *Aposporos* v. *Urban Redevelopment Commission*, 259 Conn. 563, 790 A.2d 1167 (2002). In *Aposporos*, which also concerned the Stamford urban renewal plan, the court held that the condemnation proceedings were invalid as a result of the commission's failure to follow the relevant statutory requirements. Id., 579–80. In this case, the court

---

[2] Paragraph two of the agreement states in relevant part that "[s]imultaneously with the execution of this Agreement, [the defendant] shall deliver a release of any and all claims against [the plaintiff] and the Property duly executed from [the defendant] in connection with the Property which shall contain a waiver and release of all rights and claims, whether legal or in equity in connection with the taking of the Property including, but not limited to the validity and constitutionality of the Redevelopment Plan by the [plaintiff.]"

Paragraph three of the agreement provides in relevant part: "[The defendant] represents and warrants that he will stipulate and accept the Stipulated Amount in full satisfaction of any and all claims against the City and the [plaintiff] in connection with the taking of title to the Property and will not appeal the value or the amounts set forth herein in connection with the taking of the Property and he waives any and all rights and claims, whether legal or equitable, in connection with the taking of the Property, including but not limited to the validity and constitutionality of the proposed Redevelopment Plan by the [plaintiff.]"

denied the defendant's motion and subsequently issued an articulation on March 4, 2004. The court denied the motion to open the judgment, pursuant to General Statutes § 52-212a, on the ground that it was filed more than four months after judgment was rendered.[3] This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the court improperly denied the motion to open. Specifically, he argues that the court lacked subject matter jurisdiction to render the 2000 judgment because the plaintiff had acted without statutory authority in obtaining the defendant's property. Because the defendant's motion implicated subject matter jurisdiction, the court had inherent authority at any time to open and to modify a judgment rendered without jurisdiction. See *Bove* v. *Bove*, 77 Conn. App. 355, 367, 823 A.2d 383 (2003); *General Motors Acceptance Corp.* v. *Pumphrey*, 13 Conn. App. 223, 229, 535 A.2d 396 (1988). It was, therefore, incorrect to deny the defendant's motion solely on the ground that more than four months had elapsed since the judgment was rendered. We affirm the judgment, however, for a different reason.[4]

---

[3] General Statutes § 52-212a provides in relevant part that "[u]nless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ." See also Practice Book § 17-4 (a).

Additionally, Practice Book § 17-43 (a) provides in relevant part: "Any judgment rendered or decree passed upon a default or nonsuit may be set aside within four months succeeding the date on which notice was sent, and the case reinstated on the docket on such terms in respect to costs as the judicial authority deems reasonable, upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of such judgment or the passage of such decree, and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. . . ."

[4] "It is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Sorban* v. *Sterling*

As a threshold matter, we address our standard of review. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Canterbury* v. *Rocque*, 78 Conn. App. 169, 173, 826 A.2d 1201 (2003).

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

Even if we were to assume arguendo that the court lacked subject matter jurisdiction at the time it accepted the agreement between the parties and rendered judgment accordingly, we would conclude that consideration of the defendant's motion to open the judgment was not warranted under the facts and circumstances of this case.

It often is stated that "a challenge to subject matter jurisdiction can be raised at any time" and that "[o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is

*Engineering Corp.*, 79 Conn. App. 444, 456, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003).

presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Honan* v. *Dimyan*, 85 Conn. App. 66, 69, 856 A.2d 463 (2004); see also *ABC, LLC* v. *State Ethics Commission*, 264 Conn. 812, 822–23, 826 A.2d 1077 (2003); *Fish* v. *Igoe*, 83 Conn. App. 398, 402, 849 A.2d 910, cert. denied, 271 Conn. 921, 859 A.2d 577 (2004).

Our Supreme Court, however, has stated that there are boundaries to challenges concerning the issue of subject matter jurisdiction. "As we have only recently observed . . . [*t*]*he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal.* James & Hazard, Civil Procedure (2d Ed. 1977) § 13.16, esp. 695–97; Restatement (Second), Judgments 15 (Tent. Draft No. 5 1978). . . . Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so. James & Hazard, op. cit. 695; Restatement (Second), Judgments, supra." (Citation omitted; emphasis added; internal quotation marks omitted.) *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 103–104, 616 A.2d 793 (1992); see also *Torrington* v. *Zoning Commission*, 261 Conn. 759, 767–69, 806 A.2d 1020 (2002); *Vogel* v. *Vogel*, 178 Conn. 358, 362–63, 422 A.2d 271 (1979).

We are further guided in the application of that rule by our decisions in *Daly* v. *Daly*, 19 Conn. App. 65, 561 A.2d 951 (1989), and *Morris* v. *Irwin*, 4 Conn. App. 431, 494 A.2d 626 (1985). In *Daly*, the parties divorced in 1969

and there was no direct appeal from the trial court's judgment. *Daly* v. *Daly,* supra, 65–66. In 1988, the plaintiff wife filed a motion for execution of the terms of the 1969 judgment with respect to the distribution of a trust. Id., 66. The defendant husband responded by filing a motion to open and to correct the original judgment for a lack of subject matter jurisdiction. Id. The trial court determined that the dissolution court had jurisdiction when it rendered judgment in 1969. Id.

On appeal, we concluded that, even if the dissolution court lacked subject matter jurisdiction, the defendant's collateral attack, filed in 1988, did not warrant consideration. Id., 69. First, we noted that litigation regarding subject matter jurisdiction must take into account the important principle of the finality of judgments, particularly when the parties had the opportunity to challenge the jurisdiction of the dissolution court. Id. We then stated that "[l]itigation about whether subject matter jurisdiction exists should take into account whether the litigation is a collateral or direct attack on the judgment, whether the parties consented to the jurisdiction originally, the age of the original judgment, whether the parties had an opportunity originally to contest jurisdiction, the prevention of a miscarriage of justice, whether the subject matter is so far beyond the jurisdiction of the court as to constitute an abuse of authority, and the desirability of the finality of judgments." (Internal quotation marks omitted.) Id., 69–70. Applying those factors, we declined to consider the defendant's claim. Id., 71.

Similarly, in *Morris* v. *Irwin,* supra, 4 Conn. App. 432, the parties were divorced in 1979 and entered into a stipulated agreement. In 1982, the plaintiff husband sought a declaratory judgment as to the validity of certain of the court's orders. Id. The plaintiff claimed that the court lacked subject matter jurisdiction to dispose of the marital property as it did. Id. We first identified

the modern approach as to when a subsequent collateral attack on the dissolution court's subject matter jurisdiction is proper. Id., 433. We then further explained that "[u]nder this rationale, at least where the lack of jurisdiction is not entirely obvious, *the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so.*" (Emphasis added; internal quotation marks omitted.) Id., 433–34.

We cannot say in the present case that it is obvious that the court lacked subject matter jurisdiction. We look, therefore, to the critical considerations identified in *Morris.* The plaintiff, in December, 1999, commenced proceedings to obtain the defendant's property. Subsequent negotiations resulted in the defendant voluntarily transferring his property and waiving any and all future claims against the plaintiff in exchange for not only the originally offered $620,000, but the additional $100,000 as well. The defendant, therefore, obtained the benefit of receiving the entire $720,000 in January, 2000. The property owners in *Aposporos* v. *Urban Redevelopment Commission,* supra, 259 Conn. 563, chose a different route and challenged the plaintiff's proposed taking of the property by seeking permanent injunctive relief. That action, after an appeal to our Supreme Court, ultimately succeeded. The defendant here, however, accepted the benefit of the $720,000 that he received in January, 2000, rather than undertaking an uncertain course of litigation. The defendant elected to forgo the opportunity to contest the taking of his property in favor of accepting the plaintiff's payment offer. By way of his motion to open the judgment, filed in November, 2002, he sought to attack collaterally the judgment of the court that accepted the sale of his property to the plaintiff, something he had failed to do via a direct

appeal. Having failed to raise any objection to the jurisdiction of the trial court at the time of the sale of his property, the defendant instead has brought his claim now to capitalize on the favorable outcome achieved by the plaintiffs in *Aposporos.*

We are presented with a collateral attack by the defendant on a judgment rendered in 2000 by way of his November 6, 2002 motion to open and to dismiss. "Unless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs . . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal." (Internal quotation marks omitted.) *In re Shamika F.*, 256 Conn. 383, 407–408, 773 A.2d 347 (2001). The plaintiff had the opportunity to contest the taking of his property, but instead bargained for an immediate cash payment. In reviewing the facts and circumstances of this case, we cannot say that it is a miscarriage of justice to enforce the finality of the judgment. We see no reason, in the absence of any strong policy reasons to the contrary, to afford the defendant a second opportunity to litigate the issues regarding the transfer of his property to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.