******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANDA WEYHER *v.* HARRY F. WEYHER III
(AC 37538)

Gruendel, Alvord and West, Js.*

*Argued January 19—officially released April 19, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, S. Richards, J.)

*Harry F. Weyher III*, self-represented, the appellant (defendant).

*Gary I. Cohen*, with whom, on the brief, was *Yakov Pyetranker*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Harry F. Weyher III, appeals from the trial court's ruling on his postjudgment motion to correct, modify or vacate an arbitration award that divided personal property in the marital estate between him and his former spouse, the plaintiff, Anda Weyher. On appeal, the self-represented defendant claims that the court (1) "erred ab initio in unilaterally ordering binding arbitration [with] respect [to] the division of [the parties'] personal property" in the July 12, 2013 judgment of dissolution,[1] (2) improperly concluded that he failed to prove that the arbitration proceeding was not conducted in accordance with chapter 909 of the General Statutes, as required by General Statutes § 46b-66 (c),[2] (3) improperly concluded that he failed to prove that the arbitrator exceeded his authority in the allocation of the assets, and (4) demonstrated bias against him that deprived him of a key witness at the hearing on his motion. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the defendant's claims. Following a contested trial, the court, *S. Richards, J.*, dissolved the parties' twenty-nine year marriage. There were significant assets in the marital estate. In its memorandum of decision, the court issued orders with respect to, inter alia, the marital residence, alimony, and postsecondary educational support for their daughter. With respect to the parties' personal property, the dissolution judgment provided as follows: "The personal property of the parties consisting of furniture and furnishings shall be divided by agreement between the parties within thirty (30) days from the date hereof. If the parties are not able to agree, then ownership of any disputed assets shall be decided by binding arbitration to be conducted by Roger Grenier or some other independent arbitrator appointed by the court, with the fees therefor to be divided equally between the parties. The plaintiff shall retain her personal jewelry free and clear of any claim by the defendant. The defendant shall retain his grandmother's diamond, his mother's Piaget watch and gold necklace and other inherited paintings, sculptures and antiques free and clear of any claim by the plaintiff." The parties, who were represented by counsel, did not appeal from the dissolution judgment.

One month after judgment was rendered, the parties entered into a stipulation agreement that was submitted to and approved by the court, *Hon. Stanley Novack*, judge trial referee, on August 13, 2013. In paragraph 9 of the parties' stipulation, they agreed to the following: "The parties agree to divide their personal property, household furniture and furnishings as ordered by the court in its Memorandum of Decision. For the avoidance of doubt, it is acknowledged by the parties that items inherited or gifted from their respective families

will inure to the benefit of that party." (Emphasis omitted.) On November 12, 2013, the defendant filed a postjudgment motion for contempt and for an order to compel arbitration against the plaintiff, claiming that she "knowingly and willfully violated" the court's orders "by refusing to actively participate with the binding arbitration being conducted by Roger Grenier in order to effectuate the division of the parties' personal property."

The parties thereafter proceeded to arbitration conducted by Grenier, and the defendant withdrew his motion for contempt. Grenier issued his arbitration award on January 21, 2014. On February 19, 2014, the defendant, now a self-represented party, filed a motion to correct, modify or vacate the arbitration award. The defendant's primary claim was that the arbitrator exceeded the scope of his authority as set forth in the memorandum of decision and stipulation "by considering and accounting for property already awarded to the defendant by the court and then making an adjustment in the plaintiff's favor . . . ." Specifically, the defendant claimed that he was deprived of his mother's Ebel[3] watch.[4] The defendant's motion acknowledged that the plaintiff had disposed of the watch prior to the arbitration proceeding, and, therefore, he requested that "a new watch of the same or similar value and model be procured by the plaintiff . . . ." The defendant did not argue in his motion that the court's order requiring binding arbitration was void or invalid.

A hearing on the defendant's motion, and the plaintiff's opposition to that motion, was held before the court, *S. Richards, J.*, on September 2, 2014. At that time, the defendant raised the issue of the court's authority to order binding arbitration with respect to the parties' personal property in its July 16, 2013 memorandum of decision. The defendant argued: "[T]he court was not empowered to order arbitration. The parties did not agree to have the court delegate its responsibility to an arbitrator. There was no arbitration agreement, and it does require the consent of both parties per Section 46b-66 in family matters in the Connecticut General Statutes." The defendant's second argument was that "the proceedings did not constitute arbitration. There were no established arbitration rules from the outset during, after, implemented at any time during this process. There was no agreement to arbitrate as required by [§] 52-410 of the statutes. There was no arbitration agreement setting forth the conditions and parameters of the arbitration." His final argument was that the "outcome" of the proceeding was "flawed" because the arbitrator's award was contrary to the orders contained in the court's July 16, 2013 memorandum of decision and the August 13, 2013 court-approved stipulation with respect to the Ebel watch.[5] When the court asked the defendant whether he had any evidence regarding the valuation of any of the assets in dispute, including the

watch at issue, he responded: "None whatsoever."

The plaintiff argued that the balance of the arbitration award was adjusted by the arbitrator to account for the property previously awarded to the defendant. Further, she claimed that the court's order for binding arbitration was set forth in the dissolution judgment, which was never appealed by the defendant. At that time, the defendant was represented by counsel. He could have challenged the judgment or availed himself of other available procedural remedies. Moreover, the plaintiff stated that the defendant had agreed to binding arbitration in the August 13, 2013 court-approved stipulation. Finally, the plaintiff argued that the division of the disputed assets by the arbitrator was proper because the memorandum of decision and the stipulation did not require that the allocation be based on the *value* of the items.

The court issued its decision denying the defendant's motion to correct, modify or vacate the arbitration award on December 19, 2014. The court stated that the signatures on the judgment file and the August 13, 2013 stipulation indicated that "the parties intended to . . . resolve their differences relating to their personal property by way of binding arbitration." The court further stated that "[a]lthough the defendant's motion alleges numerous claims of error, the defendant's evidence was insufficient to prove that the arbitration award should be vacated or that the arbitrator exceeded his authority." On January 5, 2015, the defendant filed a motion for articulation, requesting further clarification of the court's order. The defendant also filed an appeal from the court's December 19, 2014 order at that time.

On June 5, 2015, the court issued a memorandum of decision in response to the defendant's motion for articulation. Again the court referenced the procedural history relating to the parties' stipulation and the defendant's motion to compel the arbitration. The court additionally noted that the defendant failed to challenge the authority of the court to order binding arbitration in his motion to correct, modify or vacate the arbitration award. Nevertheless, the court recognized its failure to obtain the parties' consent to binding arbitration prior to the rendering of the dissolution judgment: "Notwithstanding the foregoing, the court is well aware of the requirements enumerated in Gen[eral] Statutes § 46b-66 that pertain to instances in which the parties have agreed to binding arbitration in an action for dissolution of marriage and surmises that it must have inadvertently ordered binding arbitration in said memorandum of decision, the original one and as corrected, after reviewing the parties' proposed orders, briefs and other voluminous exhibits." With respect to the remainder of the defendant's requests, the court declined to address them and relied on its prior rulings in its December 19, 2014 decision.

## I

We first address the defendant's claim that the "trial court erred ab initio in unilaterally ordering binding arbitration [with] respect [to] the division of personal property" in the July 13, 2013 dissolution judgment, as corrected by the court's July 16, 2013 memorandum of decision. The defendant emphasizes that the court admitted that it "inadvertently" included the order for binding arbitration in the judgment, and he argues that it was "beyond the authority of the court to mandate binding arbitration." See General Statutes § 46b-66 (c).

We note that the defendant, who was represented by counsel throughout the dissolution proceedings, advanced no objection whatsoever to the binding arbitration order *until the arbitrator issued the arbitration award*. In the defendant's proposed orders filed prior to the court's dissolution judgment, the defendant expressly requested the following order: "The parties shall equitably divide their remaining personal property. If the parties are unable to reach agreement regarding such equitable division within thirty (30) days after judgment, the matter will be submitted to a neutral arbitrator for binding arbitration, whose fees shall be paid equally by the parties. The court shall retain jurisdiction to enforce and effectuate this provision." The plaintiff's proposed orders contained a similar request: "The personal property of the parties, consisting of furniture and furnishings, shall be divided by agreement between the parties within 30 days. If they are not able to agree, then ownership of any disputed assets shall be decided by binding arbitration to be conducted by Roger Grenier or some other independent arbitrator appointed by the court, with the fees therefor to be divided equally between the parties." The court's judgment of dissolution incorporated the parties' requested arbitration language from their proposed orders with respect to effectuating the division of their personal property.

We also note, as emphasized by the trial court, that the defendant signed the August 13, 2013 stipulation that required the division of the personal property "as ordered by the court . . . ." Furthermore, when the plaintiff initially failed to proceed with arbitration, the defendant promptly filed a motion for contempt against her and sought a court order compelling her to proceed with the arbitration. The record indicates that the defendant voluntarily attended the arbitration and participated in the proceedings. Only after the arbitration award was issued did the defendant claim that the court had no authority to order the binding arbitration, this argument first surfacing at the September 2, 2014 hearing on his motion to correct, modify or vacate the award.

Despite the parties' embracing the tool of binding arbitration throughout their dissolution submissions,

the defendant is correct that the court failed to comply with § 46b-66 (c) when it included the binding arbitration provision in the dissolution judgment. Section 46b-66 (c) sets forth the procedure to be following by the trial court when the parties in a dissolution proceeding agree to binding arbitration. Any agreement to arbitrate is subject to the provisions of chapter 909 of the General Statutes provided the court makes a thorough inquiry and is satisfied that each party has entered into the agreement voluntarily and without coercion, that the agreement is fair and equitable under the circumstances, and that the agreement does not include issues related to child support, visitation and custody. If the court is satisfied that those requirements have been met, any such arbitration award shall be confirmed, modified or vacated in accordance with the provisions of chapter 909. Chapter 909 of the General Statutes, entitled "Arbitration Proceedings," contains additional requirements, including, inter alia, the need for a written agreement, the meeting of time deadlines, and the procedure for confirming, modifying or vacating an arbitration award. It is undisputed that there was no compliance with § 46b-66 (c) or chapter 909 of the General Statutes.

It also is undisputed, however, that the defendant did not appeal from the dissolution judgment that included the court's order for binding arbitration to effectuate the division of the parties' disputed personal property. The defendant first raised the issue of the authority of the court to issue such an order at the September 2, 2014 hearing, which was more than one year after the dissolution judgment was rendered. Unless the court lacked subject matter jurisdiction as claimed by the defendant,[6] he cannot now collaterally attack that judgment.

"[D]issolution courts are not vested with the authority to order parties to submit to arbitration absent a voluntary agreement. . . . Pursuant to . . . § 46b-66 (c), parties may agree, with the court's permission, to pursue arbitration to resolve certain issues related to their dissolution. A court does not, however, have the authority to order parties to submit such issues to arbitration absent a voluntary arbitration agreement executed between the parties. Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. . . . [T]he basis for arbitration in a particular case is to be found in the written agreement between the parties. . . . Parties who have contracted to arbitrate certain matters have no duty to arbitrate other matters which they have not agreed to arbitrate. Nor can the courts, absent a statute, compel the parties to arbitrate those other matters." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 224–25, 118 A.3d 657, cert. denied, 319 Conn. 910, 123 A.3d 882 (2015).

Even though the defendant is correct that the court lacked the authority to order binding arbitration in the dissolution judgment, absent an executed agreement by the parties, it does not follow that the court lacked subject matter jurisdiction when it rendered that judgment. "Although the court and the parties repeatedly use the term 'jurisdiction' during the proceedings, we note that the distribution of personal property postdissolution does not implicate the court's subject matter jurisdiction but, rather, its statutory authority." *McLoughlin* v. *McLoughlin*, 157 Conn. App. 568, 575–76 n.5, 118 A.3d 64 (2015).[7] Accordingly, although the court acted improperly when it included the provision requiring binding arbitration, the court did not lack jurisdiction when it rendered its judgment including that provision. See *Budrawich* v. *Budrawich*, 156 Conn. App. 628, 649–50, 115 A.3d 39, cert. denied, 317 Conn. 921, 118 A.3d 63 (2015).

The time for the defendant to have challenged the statutory authority for the court's order with respect to binding arbitration was when the dissolution judgment with that provision was rendered by the court. The defendant's attempt to raise the issue now is a collateral attack upon the dissolution judgment rendered on July 12, 2013. "Unless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs . . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal." (Internal quotation marks omitted.) *Urban Redevelopment Commission* v. *Katsetos*, 86 Conn. App. 236, 244, 860 A.2d 1233 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1289 (2005).

The defendant did not exercise his opportunity to appeal that judgment, and there are no facts before us to warrant a conclusion that there has been a miscarriage of justice.[8] Accordingly, the defendant's first claim fails.

II

The defendant next claims that the court improperly determined that he failed to prove that the arbitration proceeding was not conducted in accordance with chapter 909 of the General Statutes, as required by § 46b-66 (c). The defendant argues that he proved that the award was not timely rendered, that it was not signed by the arbitrator, that the arbitrator failed to state the factual basis for his award, and that the arbitrator failed to file the decision with the clerk of the court. See General Statutes § 52-416; Practice Book § 23-64.

As previously discussed, the trial court did not enter the binding arbitration order pursuant to § 46b-66, and, accordingly, the arbitration proceedings did not follow the procedures set forth in chapter 909 of the General

Statutes. We therefore look to the language of the subject provision in the dissolution judgment to determine whether the court properly denied the defendant's motion to correct, modify or vacate the arbitration award.

The court's binding arbitration order simply requires the parties to divide by agreement their personal property consisting of furniture and furnishings within thirty days of the dissolution judgment. If the parties are not able to agree, ownership of any disputed assets is to be decided by binding arbitration to be conducted by Grenier or another independent arbitrator. The defendant presented no evidence to demonstrate that the court's order was not followed. Accordingly, this claim fails.

### III

The defendant next claims that the court improperly concluded that he failed to prove that the arbitrator exceeded his authority in the allocation of the assets. Specifically, the defendant argues that the court had awarded him his mother's Ebel watch in the dissolution judgment, and that the arbitrator failed to consider that order of the court when he issued his arbitration award. The defendant claims that the award "illustrates the unbalanced allocation by the arbitrator of tangible assets due to his consideration of nonallocable assets. . . . The arbitrator specifically awarded to the plaintiff a diamond watch that the court had expressly awarded to the defendant . . . ."

We have reviewed the arbitration award. Grenier's "Personal Property Allocation" is detailed and thorough. The award expressly states that the Ebel watch, which Grenier acknowledged had been allocated to the defendant in the dissolution judgment, had been sold by the plaintiff and no longer was available for distribution. Accordingly, Grenier allocated the watch to the plaintiff and presumably took this allocation into account when he divided the numerous remaining assets. In any event, the defendant did not demonstrate that the personal property allocation was unfair or inequitable. Moreover, it is significant that the court's order did not require that the allocation be based on the *value* of the disputed items. We therefore conclude that the trial court correctly determined that the defendant failed to prove that Grenier exceeded the scope of his authority in his allocation of the disputed assets.

### IV

The defendant's final claim is that the court demonstrated bias against him that deprived him of a key witness at the hearing on his motion. The following additional facts are necessary to resolve this claim.

The defendant, as a self-represented party, decided that he wanted Grenier to testify at the September 2, 2014 hearing on his motion to correct, modify or vacate

the arbitration award. The defendant claims that the court required service of the subpoena to Grenier to be made in hand by the marshal. The defendant argues that the court's "more stringent standards of service of process" allowed Grenier to evade being served. Consequently, the defendant claims that he "was deprived of due process owing to the arbitrary, onerous and biased requirements of the court."

The defendant does not claim that he raised the issue of judicial bias at any time during the course of the proceedings. He could have requested that the judge recuse herself. "Claims alleging judicial bias should be raised at trial by a motion for disqualification or the claim will be deemed to be waived. . . . A party's failure to raise a claim of disqualification at trial has been characterized as the functional equivalent of consenting to the judge's presence at trial." (Citation omitted; internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 692, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000).

Instead, the defendant waited until after the court rendered its decision on his motion. "Our Supreme Court has criticized the practice whereby an attorney, cognizant of circumstances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) Id., 693.

Nevertheless, we will address the defendant's claim given the grave nature of his accusation. "Because an accusation of judicial bias or prejudice strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary . . . we . . . have reviewed unpreserved claims of judicial bias under the plain error doctrine. . . . Plain error exists only in truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 523, 914 A.2d 1058 (2007).

At the beginning of the September 2, 2014 hearing, the court inquired as to the whereabouts of the defendant's witness. The defendant responded that the marshal was unable to serve him personally with the subpoena. The defendant followed that representation with the statement: "I'm prepared to move forward without his testimony to alleviate some of the congestion in your court today." After some discussion relative to the binding arbitration order in the dissolution judgment and the court-approved stipulation, the court returned to the issue of the defendant's witness. The court addressed

the defendant: "You'll keep trying to serve the witness that you'd like to call . . . unless you want to go forward today." The defendant responded: "I'd like to go forward today, Your Honor." Thus, the court itself gave the defendant the option of continuing the matter so he could procure the attendance of his witness. The defendant did not avail himself of that opportunity. At no time during the hearing did the defendant claim that the court had imposed unreasonable requirements for service of process or that the court was biased against him.

The record is devoid of any indication that the court was in any way biased against the defendant. We conclude that this claim is totally without merit and is a groundless assault on the integrity of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The court issued a corrected memorandum of decision on July 16, 2013. The corrections do not affect our analysis of the claims in this appeal.

[2] General Statutes § 46b-66 (c) provides: "The provisions of chapter 909 shall be applicable to any agreement to arbitrate in an action for dissolution of marriage under this chapter, provided (1) an arbitration pursuant to such an agreement may proceed only after the court has made a thorough inquiry and is satisfied that (A) each party entered into such agreement voluntarily and without coercion, and (B) such agreement is fair and equitable under the circumstances, and (2) such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody. An arbitration award in such action shall be confirmed, modified or vacated in accordance with the provisions of chapter 909."

[3] The July 16, 2013 memorandum of decision misidentified the watch as being a Piaget watch, but it is undisputed that it was an Ebel watch.

[4] Although the defendant claims that the arbitrator improperly awarded property to the plaintiff that the court previously had awarded to the defendant, the Ebel watch is the only property identified by the defendant in the pleadings and transcript of the September 2, 2014 hearing as being improperly awarded by the arbitrator to the plaintiff.

[5] It was clear at the September 2, 2014 hearing that the defendant's primary concern was the disposition of the Ebel watch: "But, at minimum, I want that watch replaced. It has become a matter of principle. I don't like coming here four times, but it's that important to me. And that concludes my remarks."

[6] The plaintiff argues that the defendant waived this claim by his conduct before the trial court. "[W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice. . . . In determining waiver, the conduct of the parties is of great importance. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Internal quotation marks omitted.) *O'Hara* v. *Mackie*, 151 Conn. App. 515, 522, 97 A.3d 507 (2014).

We do not address the plaintiff's claim of waiver because the defendant argues that the court had no jurisdiction to enter the binding arbitration order. Our Supreme Court recently has restated the well settled rule that "[t]he subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 305 Conn. 523, 531–32, 46 A.3d 102 (2012).

[7] "[A]lthough related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *In re Jose B.*, 303 Conn. 569, 573–74, 34 A.3d 975 (2012).

[8] Even if we were to assume arguendo that the court lacked subject matter

jurisdiction at the time it included the order for binding arbitration in the dissolution judgment, we would conclude that consideration of the defendant's claim is not warranted under the facts and circumstances of this case. "It often is stated that a challenge to subject matter jurisdiction can be raised at any time and that [o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding with the case. . . .

"Our Supreme Court, however, has stated that there are boundaries to challenges concerning the issue of subject matter jurisdiction. As we have only recently observed . . . [t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal. . . . Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Urban Redevelopment Commission* v. *Katsetos*, supra, 86 Conn. App. 240–41.

"Litigation about whether subject matter jurisdiction exists should take into account whether the litigation is a collateral or direct attack on the judgment, whether the parties consented to the jurisdiction originally, the age of the original judgment, whether the parties had an opportunity originally to contest jurisdiction, the prevention of a miscarriage of justice, whether the subject matter is so far beyond the jurisdiction of the court as to constitute an abuse of authority, and the desirability of the finality of judgments. *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 468 A.2d 1230 (1983) . . . ." (Citations omitted; internal quotation marks omitted.) *Morris* v. *Irwin*, 4 Conn. App. 431, 434, 494 A.2d 626 (1985).