******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PASCAL BARONIO *v.* DONNA M. STUBBS ET AL.
(AC 38940)

Alvord, Prescott and Beach, Js.

*Syllabus*

The defendant mother appealed to this court from the judgment of the trial court awarding her and the plaintiff father joint legal custody of their minor child. The defendant claimed that the trial court erred in presuming that shared physical custody was in the child's best interest where there was not an agreement by the defendant to an award of joint legal custody, and that it committed plain error by stating during certain pendente lite proceedings that it wanted to see an increase in the plaintiff's parenting time and indicating before it heard all the evidence that it was inclined to award joint legal custody to the plaintiff. *Held*:

1. The trial court properly concluded under the circumstances of this case that the parties had agreed upon an award of joint legal custody and that shared physical custody was in the best interest of the child; the defendant's trial counsel represented to the court at the start of an evidentiary hearing that she did not object to joint legal custody and further represented to the court at the close of evidence that she was requesting joint legal custody, the plaintiff had requested joint legal custody in certain proposed orders, and the defendant did not file any opposing proposed orders.

2. The defendant's claim that the trial court committed plain error by expressing preconceived inclinations to increase the plaintiff's parenting time and to award joint legal custody was unavailing, as the record did not reveal any apparent bias or predetermination by the court against the defendant or in favor of the plaintiff; although the court may have interrupted the defendant's testimony, it was apparent that the court was attempting to keep the testimony focused on pertinent evidence, a statement of the court regarding the plaintiff's opportunity to have overnight parenting time was made at the conclusion of the hearing after both parties had testified and following the court's finding that overnight stays with the plaintiff were in the best interest of the child, and the court's determination of joint legal custody was consistent with the parties' requests at the beginning of the hearing.

Submitted on briefs October 12—officially released December 19, 2017

*Procedural History*

Action for custody of the parties' minor child, brought to the Superior Court in the judicial district of New Haven, where the court, *Goodrow, J.*, approved a temporary agreement of the parties regarding a parenting plan; thereafter, the court denied the plaintiff's request for modification of the agreement; subsequently, the court granted the plaintiff's application for joint custody and rendered judgment thereon, from which the named defendant appealed to this court; thereafter, the court approved an agreement of the parties regarding a parenting plan. *Affirmed.*

*Albert J. Oneto IV* filed a brief for the appellant (named defendant).

*Christopher M. Hansen* filed a brief for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Donna Stubbs, appeals from the judgment of the trial court awarding her and the plaintiff, Pascal Baronio, joint legal custody of their minor child. On appeal, the defendant claims that the court: (1) "erred in presuming that shared physical custody was in the child's best interest where there was not an agreement by the defendant to an award of joint legal custody within the meaning of General Statutes § 46b-56a (b)"; and (2) "committed plain error by stating during pendente lite proceedings that it wanted to see an increase in the plaintiff's parenting time, and by indicating before it heard all the evidence at trial that it was inclined to award joint legal custody to the plaintiff." We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our decision. The parties were involved in a relationship for approximately thirteen years and have one child together. The parties lived together until October, 2014, when the plaintiff moved out. The plaintiff filed an application for joint custody on December 1, 2014. The defendant filed an objection to the plaintiff's application on December 11, and an application for emergency ex parte order of custody on December 16. The court scheduled a hearing on January 8, 2015. On that date, the parties agreed upon a temporary parenting plan, which was made an order of the court. The parents' agreement permitted the plaintiff to see their child every Sunday from 9 a.m. to 6 p.m., to have telephone contact daily, and to see their child at school. On January 14, 2015, the plaintiff filed a motion for appointment of a guardian ad litem, which the court granted.

On February 11, 2015, the parties appeared before the court, *Goodrow, J.* The court heard testimony from both parties regarding, inter alia, the plaintiff's request for additional parenting time. The court found that it was in the best interest of their child to have overnights with the plaintiff, and ordered that the plaintiff have parenting time on alternating weekends from 10 a.m. on Saturday until 4 p.m. on Sunday. The parties were ordered to report back to the court on March 3, 2015, to address any concerns. On that date, the parents entered into a further agreement, and were again ordered to report back on March 31, 2015. On March 31, the plaintiff made a request for additional parenting time. Specifically, he requested parenting time with their child through Monday morning to bring their child to school on those weekends that he had overnight parenting time. Counsel for the defendant objected to the request as did the guardian ad litem, Attorney David Crow, citing the child's adjustment to a new environment in the plaintiff's home. The court denied the plaintiff's request without prejudice, ordered the parties to return in two weeks, and ordered the guardian ad litem to provide a report on that date. On April 14, 2015, the

guardian ad litem recommended that the plaintiff's parenting time be increased to include Sunday night through Monday morning. The parents entered into an agreement, which the court adopted, that included this additional parenting time.

The parties next appeared before the court on September 11, 2015, for a contested hearing on the plaintiff's application for joint custody. The plaintiff filed with the court proposed orders in which he requested joint legal and shared physical custody. The defendant did not file proposed orders with the court. In addition to the testimony of the plaintiff and the defendant, the court also heard testimony from Susan Falato, an art therapist with Shoreline Wellness in West Haven, Cheryl Iannucci, a care coordinator for Beacon Health Options in Rocky Hill, Allyson Popel, the child's kindergarten teacher, and Attorney Crow. The court issued an oral decision on February 1, 2016, in which it ordered joint legal custody and shared physical custody, and further ordered the plaintiff's proposed parenting time. The parties subsequently agreed upon a parenting plan, which the court approved. This appeal followed.

I

We first address the defendant's claim that the court "misapplied the law governing awards of joint legal custody under General Statutes § 46b-56a." Specifically, she claims that the statute permits a presumption that joint custody is in the best interests of the child only if the parties have agreed to an award of joint custody. She claims that "the record was insufficient to support a finding that the defendant agreed to share joint legal custody" with the plaintiff, and thus, "there was no legal basis upon which the family court could presume, as it did, that shared physical custody was in the child's best interests." We disagree.

The following additional facts are relevant to this claim. On September 11, 2015, at the start of the contested hearing on custody, the plaintiff provided the court with proposed orders in which he requested joint legal and shared physical custody. Specifically, the plaintiff sought a biweekly custodial plan, pursuant to which he would have parenting time with their child from 10 a.m. Saturday through Wednesday morning on week one, and from 6 p.m. Sunday through Wednesday morning on week two. The defendant did not submit proposed orders to the court. When the court therefore inquired as to what the defendant was requesting, her counsel stated that "the status quo should be maintained. The present orders should be maintained." The court then inquired as to whether the defendant was objecting to joint legal custody, and her counsel replied that she was not.

During the testimony of Attorney Crow on the final day of the hearing, the court inquired as to whether he

had "a recommendation as to custody, whether it should be joint or sole." Attorney Crow responded that he wanted to see joint legal custody, to which the court responded: "I do, too. Here's my concern, they don't seem to be able to communicate." Attorney Crow then expressed his opinion that the parties, despite a number of minor issues on both sides, had been working together. At the conclusion of evidence, the court heard argument from both parties. The court specifically requested that the parties address what they were asking the court to order and the statutory factors the court has to consider. The following colloquy occurred between the court, Attorney Christopher Hansen for the plaintiff, and Attorney Joseph DePaola for the defendant:

"The Court: [A]s I understand it, Attorney Hansen, you're asking for joint legal custody with a split fifty/fifty time split. Is that correct?

"[The Plaintiff's Counsel]: Not in—Judge, we are asking for shared physical, but it's actually about fifty-five/forty-five, the fifty-five being with the mother.

"The Court: All right. That's based on your last—what you put on the record when we began.

"[The Plaintiff's Counsel]: Yes. And it's . . . in the proposed orders, Your Honor.

"The Court: And, Attorney DePaola, what is it, specifically, that you're asking for?

"[The Defendant's Counsel]: I'm asking for the current order to remain in effect, taking into account the [guardian ad litem's (GAL)] suggestion that an additional evening be inserted.

"The Court: And joint legal custody?

"[The Defendant's Counsel]: Joint legal custody, primary physical residence with my client, final decision making authority with my client, and the current order is to remain in effect except for that extra day during the week that was suggested by Mr. Crow.

"The Court: How does the court entertain a join—your—you're—I infer you're also requesting joint custody—legal custody. Is that right?

"[The Defendant's Counsel]: Yeah, I thought I said that. Yeah.

"The Court: I'm sorry. I must have missed it.

"[The Defendant's Counsel]: I'm sorry.

"The Court: How—

"[The Defendant's Counsel]: Joint legal custody, primary physical residence with the defendant mother; defendant mother to have final decision making authority, current visitation schedule to remain in effect with an additional evening per the recommendation of the

GAL.

"The Court: My question—and this is—I'm going to ask Attorney Hansen the same question, how does the court enter a joint legal custody order, particularly from your perspective, Attorney DePaola, where your client has said that she doesn't have the ability to communicate with the plaintiff father regarding important decisions?

"[The Defendant's Counsel]: Well, I—I think they've come a long way from where they started, Judge. I'm not sure that's a foregone conclusion at this point.

"The Court: Do you understand why that raises a concern for the court when your client [is] saying she can't communicate with the father?

"[The Defendant's Counsel]: I—I think it would be a concern, but in this case, I think in view of all of the circumstances and with the testing and the coparenting class that they're going to attend; I think they'll be able to overcome that."

The court, noting that it had considered the statutory factors in the evidence, ordered joint legal custody and further ordered the plaintiff's proposed parenting time. The court ordered the parties to agree on a schedule, which they did, and the court approved the parents' agreement.

We first note the well settled standard of review in family matters. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Keenan* v. *Casillo*, 149 Conn. App. 642, 644–45, 89 A.3d 912, cert. denied, 312 Conn. 910, 93 A.3d 594 (2014).[1]

"There shall be a presumption, affecting the burden of proof, that joint custody is in the best interests of a minor child where the parents have agreed to an award of joint custody or so agree in open court at a hearing

for the purpose of determining the custody of the minor child . . . ." General Statutes § 46b-56a (b). "This section does not mandate joint custody; it only creates a presumption that joint custody would be in the best interests of a minor child under certain circumstances. It is still for the trial court to decide whether joint custody has been agreed to by the parties." *Timm* v. *Timm*, 195 Conn. 202, 209, 487 A.2d 191 (1985). Whether the parties have agreed to such an award is a question for the trial court. See *Emerick* v. *Emerick*, 5 Conn. App. 649, 657, 502 A.2d 933 (1985), cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986).

On the basis of the record before it, the court in the present case reasonably could have concluded that the parties had agreed upon an award of joint legal custody.[2] The defendant's counsel represented to the court at the start of the hearing that she did not object to joint legal custody. The defendant's counsel further represented to the court at the close of evidence that she was requesting joint legal custody. Moreover, the plaintiff had requested joint legal custody in his proposed orders, and the defendant did not file proposed orders. "[J]udicial review of a trial court's exercise of its broad discretion is limited to the questions of whether the court correctly applied the law and could reasonably have concluded as it did." (Internal quotation marks omitted.) *Timm* v. *Timm*, supra, 195 Conn. 210. The court reasonably could have concluded, under the circumstances of this case, that a joint custody award was both agreed upon and was in the best interests of the child.[3]

## II

We next address the defendant's claim that the court committed plain error because it "publicly committed itself, prior to the start of trial, to increasing the plaintiff's parenting time, and because the family court announced before hearing all of the evidence that it wanted to give joint legal custody of the child to the plaintiff." The defendant, who was represented by counsel throughout the custody proceedings, did not file a motion for disqualification pursuant to Practice Book § 1-23, nor did she file a motion for a mistrial. Conceding that "ordinarily the Appellate Court will not review a claim of judicial bias unless the claim was properly presented to the trial court through a motion for mistrial," the defendant requests review under the plain error doctrine. We conclude that the court did not commit plain error.

We first note that "[o]ur Supreme Court has criticized the practice whereby an attorney, cognizant of circumstances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be

against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) *Weyher* v. *Weyher*, 164 Conn. App. 734, 749, 138 A.3d 969 (2016). Nevertheless, "[b]ecause an accusation of judicial bias or prejudice strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary," this court has reviewed unpreserved judicial bias claims under the plain error doctrine. (Internal quotation marks omitted.) Id., 749–50. "Plain error exists only in truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id., 750.

The defendant claims that the court expressed "preconceived inclination[s]" to grant the plaintiff's request for additional parenting time, and later, shared custody, on two occasions, February 11 and March 31, 2015. She further claims that the "taint of predetermination" was evident in "the manner in which the court permitted the plaintiff's case to be presented."

Specifically, the defendant first claims that the court interrupted her testimony during the February 11 hearing to admonish her.[4] She states that when asked why she thought it was in the child's best interest not to have overnight visits with the plaintiff, the defendant explained that she was the child's sole caretaker and that she had taken the child to all of his doctor's appointments. The court then stated: "this actually isn't about you" and further stated "[i]t's about your son." The court told the defendant that although it did not consider the plaintiff's request unreasonable, if the defendant thought it was not in the child's best interest, the court wanted to know about that. The defendant claims that the court interrupted her testimony a second time to permit the plaintiff to ameliorate concerns raised by the defendant about access to inappropriate material on television.[5] Next, she points to the court's oral decision granting the plaintiff's request for additional parenting time, in which the court stated: "The court finds that it is in the best interest of the child to have overnights with his father. . . . [T]his order and decision does not take away at all from the hard work that mother's been doing, but I feel strongly father should have the opportunity to have overnights and child should have the opportunity to be with father."

The defendant also claims that the court "reinforced" the appearance of a predetermined inclination to grant the plaintiff's request for shared custody on March 31, 2015, when it ordered the parties to return in two weeks, ordered the guardian ad litem to provide a report on that date, and stated that it "intend[ed] to extend father's parenting time." Lastly, the defendant suggests that the court erred in remarking, during Attorney Crow's testimony on February 1, 2016, that it too wanted to see

joint legal custody prior to the defendant concluding her rebuttal evidence.

Our thorough review of the transcripts of the hearings does not reveal any apparent bias or predetermination against the defendant or in favor of the plaintiff. Although the court may have interrupted the defendant's testimony, we conclude that it was apparent that the court was attempting to keep the testimony focused on pertinent evidence.[6] See *Wiegand* v. *Wiegand*, 129 Conn. App. 526, 535, 21 A.3d 489 (2011) (although the court, at times, "demonstrated some frustration and impatience with the plaintiff," the court's statements were "impartial and were meant to keep the plaintiff focused on relevant evidence that properly could be considered by the court"); *Giordano* v. *Giordano*, 9 Conn. App. 641, 644, 520 A.2d 1290 (1987) (rejecting defendant's claim that the court, inter alia, "had a preconceived opinion which raise[d] questions about the impartiality of the proceeding" where defendant's claim was based on "a few comments carefully culled from the course of the entire trial"). The court's statement regarding the plaintiff's opportunity to have overnight parenting time was made at the conclusion of the hearing after both parties had testified, and the statement immediately followed the court's finding that overnights were in the best interest of the child.[7] Lastly, we find no error in the court's agreement with Attorney Crow that it wanted to see joint legal custody, where joint legal custody was consistent with the parties' requests at the beginning of the hearing. See part I of this opinion. Because we find no merit to the defendant's claim of judicial impropriety, the defendant has failed to demonstrate the existence of plain error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant argues that this court should engage in plenary review of her claim because she challenges the trial court's application of governing law. We disagree. The gravamen of the defendant's claim is that the court improperly awarded joint custody after erroneously finding that the parties had agreed to joint legal custody. Such a claim is properly reviewed under the abuse of discretion standard. See, e.g., *Timm* v. *Timm*, 195 Conn. 202, 209–10, 487 A.2d 191 (1985) (reviewing under abuse of discretion standard defendant's claim that trial court erred in declining to award joint custody, where defendant claimed both parties had agreed to joint custody); *Keenan* v. *Casillo*, supra, 149 Conn. App. 644–48 (reviewing under abuse of discretion standard claim that court erred in ordering joint custody because it lacked statutory authority).

[2] The defendant relies primarily upon *Timm* v. *Timm*, supra, 195 Conn. 210, in which our Supreme Court held that the trial court reasonably could have concluded that a joint custody award was not agreed upon by the parties. In *Timm*, although the plaintiff had testified at one point that she thought joint custody was "in the best interest of the children"; (internal quotation marks omitted) id., 208 n.2; she had earlier testified, in answering a question requesting that she explain why she would not be willing to have joint custody: "I don't know, specifically the way we have been getting along. And we can't get along. And, I think, the tension between us if we were to have joint custody at this point; we can't communicate at all. And I just think it would be too difficult at this stage of the game." (Internal quotation marks omitted.) Id., 209.

In the present case, even with both parties requesting joint legal custody,

and the guardian ad litem recommending joint legal custody, the court still gave careful consideration to the parties' ability to communicate with each other. The defendant's counsel represented to the court that the parties had come a long way and would be able to overcome communication issues. On the basis of this record, we determine that the court, after hearing all of the evidence and the testimony of each of the witnesses, reasonably could have concluded as it did.

[3] The defendant further claims that the court erred in awarding joint legal custody in light of her counsel's request for "[j]oint legal custody, primary physical residence with [the defendant], final decision making authority with [the defendant]," which she argues served as a clear request for sole legal custody. We disagree. As this court has previously recognized, "final decision making authority" in one parent is distinct from sole legal custody. See *Desai* v. *Desai*, 119 Conn. App. 224, 230, 987 A.2d 362 (2010) (noting Appellate Court's rejection of argument that grant of ultimate decision-making authority to one parent is, in effect, order of sole custody); *Tabackman* v. *Tabackman*, 25 Conn. App. 366, 368–69, 593 A.2d 526 (1991) (rejecting argument that award of joint legal custody with ultimate decision-making authority in one parent is "the functional equivalent of an award of sole custody").

[4] The following colloquy occurred:

"[The Defendant's Counsel]: Tell the judge why you think it's in [the child's] best interest not to have overnight[s] with Mr. Baronio at this point in time?

"[The Defendant]: Because, Your Honor, I have been his sole caretaker. I have taken my son to every single one of his doctor's appointments. My attorney has his records with proof of that.

"The Court: With all due respect, ma'am—

"[The Defendant]: Yes.

"The Court: —this actually isn't about you.

"[The Defendant]: Okay.

"The Court: It's about your son.

"[The Defendant]: Right.

"The Court: So the question is, he's five years old . . . this court and your lawyer will . . . tell you this, [your lawyer] knows me well enough . . . believes that parents, both parents . . . should be actively involved . . . in their children's lives. . . . And so I don't think that it is unreasonable . . . what father is asking for. . . . But if you think it's not in your child's best interest . . . then I want to know about . . . that."

[5] Immediately following the court's inquiry of the plaintiff regarding television access, the defendant's counsel asked the defendant what visitation schedule would be fair. The following exchange, which the defendant emphasizes in her brief, occurred:

"[The Defendant]: . . . He's more than welcome to take him from 9 o'clock and I would like him home at 4 o'clock so I can feed my son because of the incident that happened this past weekend, again, when he's had him and I've brought him to him on time every time like it was ordered. I've continued to take my son to school in Milford.

"The Court: What's the incident this weekend?

"[The Defendant]: My son had chicken on Thursday night with me, Friday with me—no, excuse—Friday night with me, Saturday night with me, and he fed him chicken twice on a Sunday.

"The Court: You're not seriously telling the court that you—

"[The Defendant]: What—

"The Court: —let me—

"[The Defendant]: No—

"The Court: —finish.

"[The Defendant]: —no, no, no. Okay.

"The Court: Let me finish. You're not seriously telling the court that you think father shouldn't have an overnight because your son's eating chicken four nights in a row?

"[The Defendant]: No, no, no. He threw up when he came home. . . .

"The Court: —and you attribute—

"[The Defendant]: —I—

"The Court: —that to father's chicken?

"[The Defendant]: I attribute it to him—three things, maybe not taking him out when he was sick and he had the flu. He vomited, he had a fever, he had diarrhea. So I asked his father, what did he eat? I was trying to figure out if he had food poisoning."

[6] We likewise find no error in the court seeking clarification from the then

self-represented plaintiff in response to the defendant's testimony regarding television access.

[7] The cases cited by the defendant are factually distinct from the matter before this court. See *Cameron* v. *Cameron*, 187 Conn. 163, 170, 444 A.2d 915 (1982) (holding that trial judge should have ordered mistrial after stating several times that he believed defendant or his counsel was "attempting to perpetrate" fraud on the court and that defendant had lied during deposition, and where the court had invited defendant to testify and immediately held him in contempt); *Havis-Carbone* v. *Carbone*, 155 Conn. App. 848, 867, 112 A.3d 779 (2015) (finding plain error where the trial court granted plaintiff permission to relocate to another state with parties' child prior to conducting hearing, at which plaintiff bore burden of proving by preponderance of evidence that, inter alia, relocation was in best interests of child).

───────────────────────